James **ODDIE**, Edward **Cwiertniewicz**, John Penzak, Oscar King, Harry C. Bremmer, **Plaintiffs-Appellees,**

v.

**ROSS GEAR AND TOOL COMPANY, Inc., Defendant-Appellant.**

No. 14712.

United States Court of Appeals Sixth Circuit.

July 16, 1962.

Owen J. Neighbours, Indianapolis, Ind. (Floyd W. Burns, James M. Nicholson, Indianapolis, Ind., on the brief; Cadick, Burns, Duck & Neighbours, Indianapolis, Ind., of counsel), for defendant-appellant.

John A. Fillion, Detroit, Mich. (Harold A. Cranefield, Gordon A. Gregory, Detroit, Mich., on the brief), for plaintiffs-appellees.

Frank E. Cooper, Detroit, Mich., on the brief, Beaumont, Smith & Harris, Dorr F. Lovett, Dwight H. Vincent, Detroit, Mich., of counsel, amicus curiae for Michigan Manufacturers' Assn.

Before MILLER, Chief Judge, and WEICK and O'SULLIVAN, Circuit Judges.

SHACKELFORD MILLER, Jr., Chief Judge.

The plaintiffs, who are citizens of the State of Michigan and are employees of the Gemmer Manufacturing Company Division of the defendant, Ross Gear and Tool Company, Inc., an Indiana corporation, are members of Local 80 of the International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, UAW (AFL-CIO), hereinafter referred to as the "Union," the bargaining representative for said employees. They filed this action in the District Court on June 15, 1961, on behalf of themselves and other employees similarly situated for a declaration of rights with respect to their seniority or recall-to-work rights under the collective bargaining agreement then in effect between the Union and the Gemmer division of the defendant. Jurisdiction is based upon diversity of citizenship and the amount in controversy. Section 1332 (a), Title 28, United States Code. McGarry v. Lentz, D.C., 9 F.2d 680, 683, affirmed, 13 F.2d 51, C.A. 6th, cert. denied, 273 U.S. 716, 47 S.Ct. 108, 71 L.Ed. 855.

The material facts, which are not in dispute, are as follows. The defendant is a manufacturer of steering gears, with operations in the United States, England, France, Brazil, Australia, Germany and Spain. The Gemmer Manufacturing Company was an independent corporation until 1956 when it was purchased by the Ross Gear and Tool Company. Its plant was located at Detroit, Michigan. Since 1936 the Union has represented the employees at this Detroit plant. Although there were collective bargaining contracts prior to 1948, we are here concerned with only the collective bargaining contracts of 1947, 1951, 1955 and 1958 and the negotiations in connection therewith. The current contract, hereinafter referred to more in detail, was entered into December 19, 1958, and was due to expire on October 1, 1961, several months after this action was filed.

Prior to the filing of this action, the defendant had a plant in Lafayette, Indiana, known as "Ross Gear and Tool Company, Inc." hereinafter called the Lafayette plant, and a plant in Detroit, Michigan, known as "Gemmer Manufacturing Company, a division of Ross Gear and Tool Company, Inc.," hereinafter called the Detroit plant. The Detroit

plant was located on Mt. Elliott, between Milwaukee and Harper.

On January 13, 1961, the defendant posted a notice to the employees at the Detroit plant, signed by John E. Jarrell, President, reading as follows:

"TO ALL OUR EMPLOYEES:

"The Ross Gear and Tool Company has formed a new division; 'The Tennessee Division of the Ross Gear and Tool Co., Inc.'

"This division is building a plant at Lebanon, Tennessee to manufacture new products in addition to some products which are now manufactured at Lafayette and Detroit.

"The pitman arm manufacturing of both Lafayette and Detroit is being transferred to the new division.

"Economic studies are being made on the basis of present and potential business in order to determine if the manufacturing of additional products should be combined in existing divisions or transferred to the new division."

In a letter to defendant dated January 25, 1961, Ken Morris, Co-Director UAW Region 1, stated that the notice of January 13, 1961, had caused much concern on the part of the employees as it pertained to their continued job security. He wrote:

"Because it is evident that some jobs are leaving the Detroit Plant for the Lebanon Tennessee Plant, we are requesting that any employee affected because of the transfer of a job, be given an opportunity to go to Lebanon with the job.

"We feel you will agree that the long service given by an employee to the company should be allowed to continue if he is willing to follow the operation to the new company location."

He asked for a meeting at the Company's earliest convenience "to reach an understanding on the methods and principle of employees right to transfer with their jobs."

After an exchange of several letters, in which the Company took the position that there was no need for a meeting and that it might be more appropriate to hold such a meeting after the Company had completed certain studies, Morris wrote on February 22, 1961, that if he did not hear from the Company in the next forty-eight hours indicating a willingness to arrange a meeting, the Union would file immediate complaint with the National Labor Relations Board, plus taking such other legal steps necessary to require the Company to bargain in good faith with the organization which represented the Company's employees. By letter of February 27, 1961, the Company agreed to the requested meeting, suggesting the date of March 8, 1961, as the date therefor.

In the meantime, on February 6, 1961, defendant posted a second notice to the employees at the Detroit plant, signed by G. Bissett, who was Vice-President of the Gemmer Division, which referred to recent newspaper and radio stories which suggested that the defendant intended to move its entire Detroit operation to Lebanon. This notice concluded with the following:

"The economic studies referred to in the January 13 announcement are still in progress. Should these studies indicate the advisability of moving or combining the production of other products, either here or at other plants, you will be advised by Mr. Jarrell or myself."

On March 3, 1961, the defendant posted a third notice to the employees at the Detroit plant, signed by its President, which stated that the purpose of the notice was to help clarify some of the conflicting rumors which were rampant in the factory and even in the city. The notice stated that in recent years the Company had increasing difficulty in meeting competition to the point where some items were being produced at a price that was not profitable in view of the production costs, and that it was necessary that the management of the Company do everything that could be

done to produce the Company's products at the lowest possible production cost; that the former Gemmer Manufacturing Company was having a very unfavorable profit experience when it was acquired by the defendant in 1956, and that while the defendant hoped that it could do much better with Gemmer's facilities than Gemmer had done, this had not proven to be the case, with the exception of one year, and that the rapidly changing economic and competitive conditions in general and those in Gemmer's field in particular, had complicated the situation to such an extent as to make it appear that the Company would never be able to operate profitably in the Detroit plant. It also stated that many Southern states had authorized cities to subsidize the building of new manufacturing plants; that the construction of the new Tennessee plant was being subsidized by the City of Lebanon; that other advantages, such as lower taxes, lower operating costs, and the like, were also offered; that the Company planned that new products would be put in the new plant and that studies would be made to see what other items might be produced there; that the Company was in the process of completing these studies, but did not presently have definite conclusions to announce; that it was a possibility that a major portion of the items then being produced in the Detroit plant would be transferred to the Lebanon plant; and that the Company would consider all the factors carefully and would not cease operations at Detroit if it could be avoided.

The meeting between the defendant and the Union took place on March 9, 1961. At the meeting the defendant did not agree to the Union's request that any employee affected because of the transfer of the job be given the opportunity to go to Lebanon with the job and his seniority rights pertaining thereto. The defendant took the position that employees whose jobs were eliminated would be treated the same as other employees in the past had been treated in job elimination situations, that is. they would be given the rights provided for them in the seniority provisions of the current contract between the Company and the Union; that these employees, consistent with their seniority rights, would be retained at work in the Detroit plant; that the Company did not plan to offer reemployment at the Tennessee Division to the employees whose jobs at the Detroit plant were eliminated, and that in the event employees were laid off as a result of the transfer, the laid-off employees would not be the occupants of the transferred jobs.

On May 9, 1961, Morris wrote to the Company stating that the Company was under a duty to recall at Lebanon employees laid-off in Detroit as a Federal Court of Appeals recently made clear in Zdanok v. Glidden Co., 288 F.2d 99, C.A. 2nd. He closed this letter by stating:

"This is to advise you that if you persist in your present determination to breach this duty, legal action will be taken."

On May 22, 1961, the defendant posted a notice to the employees at the Detroit plant, signed by its President, which referred to the establishment of the Lebanon plant and the study which had been given to the overall picture, and advised that, in view of the fact that it had become obvious that the Detroit operation could not be expected to be a profitable one on a competitive basis, the defendant had decided, with reluctance on the part of its officials, to terminate the Detroit operation of the Gemmer Division of the Company. The notice stated that the Company expected to start the transfer of operations by July 1, 1961, and that on or about September 2, 1961, it expected to discontinue production at Detroit and commence moving the remainder of the production and maintenance equipment.

Thereafter, the plaintiffs filed their complaint in the present action, which set out the foregoing facts and took the position that the seniority rights of the defendant's Detroit employees under the 1958 collective bargaining agreement survived the transfer of defendant's Detroit operations to Lebanon, and that

when defendant commenced at Lebanon its operations transferred from Detroit, it would be under a duty to honor at Lebanon the seniority rights of its Detroit employees and recall them to work, in accordance with those rights. They also contended that these seniority rights would continue in existence and would be applicable to operations at the Lebanon plant after October 1, 1961, at which time the current collective bargaining agreement terminated. Defendant by its answer took the position that the 1958 bargaining agreement, under which the plaintiffs claimed the seniority rights in question, was applicable by its express provisions only to the Detroit plant and that, accordingly, it had no application to the operations of the defendant at its plant in Lebanon, Tennessee. The Company also took the position that, even if the collective bargaining agreement was applicable to the Lebanon operations, it was only applicable until October 1, 1961, at which time the bargaining agreement terminated by its express terms.

This presents for consideration the provisions of the collective bargaining agreement which pertain to these opposing contentions. The 1958 agreement, in effect at the time, provides as follows in its opening paragraphs:

"AGREEMENT
"THIS AGREEMENT is entered into this 19th day of December, 1958, by and between GEMMER MANUFACTURING COMPANY (of Detroit, Michigan), which is a division of Ross Gear and Tool Company, Inc. (a corporation of Lafayette, Indiana), and which Gemmer is hereinafter referred to as the 'Company,' and the INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW (AFL-CIO), AND LOCAL 80, THEREOF, hereinafter referred to as the 'Union.'

"WHEREAS, the parties to this agreement desire to promote the spirit of harmony and cooperation between them and insure the most efficient operation of the Company's plant, the following agreement is entered into:

"RECOGNITION
"1. The Company recognizes the union as the exclusive representative of its employees in its plant or plants which are located in that portion of the greater Detroit area which is located within the city limits of Detroit for the purpose of collective bargaining on matters of wages, hours and conditions of employment, excluding those mentioned in the next succeeding paragraph."

There is no dispute between the parties that paragraphs 17–40 of the agreement, under the heading of "Seniority" give certain seniority and recall-to-work rights to the plaintiffs and other employees of the Gemmer Company in the Company's operation of the Detroit plant. What is presented for decision is whether these seniority and recall-to-work rights are applicable to the defendant's operation of its plant at Lebanon, Tennessee, and, if so, whether they ceased to exist or expired with the expiration of the collective bargaining agreement on October 1, 1961.

The District Judge rendered an opinion on July 5, 1961, which is reported at 195 F.Supp. 826, in which he held that the 1958 collective bargaining agreement granted employees certain benefits and rights that became "vested" in the sense that they could not be unilaterally denied without their consent or other agreed means, such as the right to discharge; that these rights extended beyond the time limitations of the collective bargaining agreement; that these rights applied to a "plant" regardless of physical location under the contract and previous contracts; and that these rights included, among other things, seniority rights for the purpose of rehiring after layoff (which could go beyond an anniversary date) as provided in the agreement. The District Judge said that he felt bound by the ruling and reasoning

of the Glidden case, supra, which was the case referred to in the Union's letter of May 9, 1961, and the contract being not to the contrary, the defendant had an obligation and duty to rehire on the basis of seniority those employees laid off in Detroit when that plant's operations were removed to Lebanon, Tennessee. An order declaring the rights of the parties in accordance with the views expressed in the opinion was entered July 7, 1961, from which this appeal was taken by the defendant.

Plaintiffs, in support of the judgment, rely strongly upon the ruling of the Court of Appeals for the Second Circuit in Zdanok v. Glidden Co., supra, 288 F.2d 99, and the reasoning of the District Judge in the present case, particularly the statement in his opinion that "The Gemmer Division plant is the same plant wherever it is moved, in spite of the fact it might be known by a different name. Mere change of form will not change the substance, nor will mere change of location. This is the same plant, same machinery and equipment, same operation, same officers and supervisors, but in a new climate." They urge upon us that it would be unreasonable under such circumstances to have the agreement applicable to the plant while operating in Detroit and to hold that it is not applicable to the same plant merely because it has been moved to Tennessee.

Defendant relies upon the express wording of the agreement, which it contends specifically provides that the agreement is applicable only to a plant located within the city limits of Detroit; that there are good and valid reasons for restricting the application of the agreement to its plants within the city limits of Detroit, but, irrespective of that, in the absence of the restriction being contrary to public policy, it is of no concern to the Court whether the restriction is reasonable or unreasonable when the parties have expressly contracted for that result.

The collective bargaining agreement provides that the Company recognize the Union as the exclusive representative "of its employees in its plant or plants which are located in that portion of the greater Detroit area which is located within the city limits of Detroit for the purposes of collective bargaining. * * *" This is plain, unambiguous language. The agreement gave seniority and recall-to-work rights to employees in the defendant's plants which were within the city limits of Detroit. It gave no such rights to employees of a plant in Tennessee. Plaintiffs concede that the agreement is not applicable to employees in a company plant in Michigan, even though only a short distance outside of the city limits of Detroit. They concede that the agreement would not be applicable to employees in a new plant in Tennessee other than the Gemmer plant. We see no material distinction, with respect to geographical location, between a new plant in Tennessee and the relocation of the Gemmer plant in Tennessee. In both cases the plant, new or old, is not in the city limits of Detroit, as limited by the agreement. It is true, as the District Judge pointed out, that the plant in Tennessee has the same machinery and equipment, the same officers and supervisors, and the same operation, but, as also stated by him, it is in a "new climate," which of course recognizes that it is not in the city limits of Detroit, but in Tennessee. Whether it would be advisable or reasonable under the existing circumstances to have the agreement apply to the plant in Tennessee is not for the Court to decide. We must construe the contract as it is written, rather than make a new contract for the parties. Standard Oil Co. v. Ogden & Moffett Co., 242 F.2d 287, 291–292, C.A. 6th; Dura Electric Lamp Co. v. Westinghouse Electric Corp., 249 F.2d 5, 7, C.A.3rd; Jenkins v. King, 224 Ind. 164, 65 N.E.2d 121, 163 A.L.R. 397; Babcock Coal & Coke Co. v. Brackens Creek Coal Land Co., 128 W.Va. 676, 37 S.E.2d 519, 163 A.L.R. 871.

We are not in agreement with plaintiffs' contention that the agreement was for the benefit of the employees of the Gemmer Company, wherever it might

be, in Detroit or in Tennessee, and that the reference in the agreement to the city limits of Detroit was merely a reference to where the Gemmer Company was then located. This ignores the fact that the reference is not to the employees of the Gemmer Company but to the Company's employees "in its plant or *plants*" within the city limits of Detroit. (Emphasis added.) The fact that the beneficiaries of the contract are specifically designated as the employees in all of the Company's plants within the city limits of Detroit instead of merely the employees of the Gemmer Company in Detroit makes it plain that the words were not used for the purpose of merely giving the present location of the Gemmer Company.

This argument is essentially the one upon which the Court of Appeals for the Second Circuit rested its decision in Zdanok v. Glidden Co., supra. But in that case there was a specific reference to one plant only, the address of which was specifically given, and there was no specific geographical limitation such as is contained in the agreement in the present case. In that respect the agreement in the Glidden Company case is materially different from the agreement in the present case, and in our opinion is not applicable on this phase of the case. In Metal Polishers, etc. v. Viking Equipment Co., 278 F.2d 142, C.A.3rd, also relied upon by the plaintiffs, it appears that the new location of the plant involved was still within the geographical limits referred to in the collective bargaining agreement, which, of course, is vitally different from the situation which we are considering in the present case.

■ Nor do we think there is merit in the contention that plaintiffs' seniority rights at the Detroit plant are "vested" rights, which cannot be cut off or defeated by the relocation of the plant in Tennessee. The argument is based upon the theory that through years of employment at the Gemmer plant they have "earned" such seniority rights in accordance with the terms of the agreement, which cannot be cancelled or taken from them by unilateral action on the part of the defendant, at least during the life of the bargaining agreement. Whether such rights continue in existence beyond the end of the current bargaining agreement is another question, which we are not now considering. Clearly, the word "vested" is not the correct word to describe these rights, in that there are a number of ways in which such rights may be terminated or lost. Section 31 of the bargaining agreement provides for loss of seniority rights for any one of nine separate reasons, including quitting work or being discharged and not being reinstated through the grievance procedure. If an employee should die, his "earned" seniority rights become worthless and are not enforceable rights against the employer. If the company discontinues in business and terminates its operations, the employees' seniority rights are terminated. Local Lodge, 2040, etc. v. Servel, Inc., 268 F.2d 692, 697–699, C.A.7th. It appears to be well settled that such rights of the individual employees can be bargained away by the Union representing them in collective bargaining. Elder v. New York Central R. Co., 152 F.2d 361, C.A.6th; System Federation No. 59, etc. v. Louisiana & A. Ry. Co., 119 F.2d 509, 515, C.A.5th. It was so recognized in Zdanok v. Glidden Co., supra, 288 F.2d 99, 103, C.A.2nd.

■ Accordingly, we do not have the question of whether plaintiffs' "vested" rights can be validly terminated by relocation of the plant in Tennessee. Rather, it is the question of what rights, if any, the plaintiffs have under the express provisions of the bargaining agreement upon the relocation of the plant in Tennessee. If no rights were acquired under the bargaining agreement as employees at the Tennessee plant, it necessarily follows that no rights have been cut off. If the 1958 bargaining agreement bargained away the employees' seniority rights which they had at the Detroit plant in the event they sought employment at a company plant in any

city other than Detroit, they lost their rights through operation of the contract. Elder v. New York Central R. Co., supra, 152 F.2d 361, C.A. 6th; System Federation No. 59, etc. v. Louisiana & A. Ry. Co., supra, 119 F.2d 509, 515, C.A. 5th. As heretofore pointed out, the only question which we have is what is the proper construction to be given to the 1958 agreement between the parties. Under our construction of the agreement the employees acquired no seniority rights under the 1958 agreement as employees at the Tennessee plant. Since no rights were acquired, we do not reach the question of any rights being cut off by unilateral action on the part of the defendant, either during the existence of the bargaining agreement or after its expiration.

The construction which we are presently giving to the collective bargaining agreement appears to be in accord with the construction also given to it by the Union until shortly before the filing of this action. In August 1947 Gemmer Manufacturing Company, predecessor of the Gemmer Company herein, entered into a collective bargaining agreement with the Union, in the preamble of which the address of Gemmer Manufacturing Company was given as 6400 Mt. Elliott Avenue, Detroit, Michigan. The recognition clause recognized the Union as the exclusive representative of its employees without any other designation or limitation of geographical area. The company maintained an experimental plant on Nine Mile Road just outside the city limits of Detroit. In the 1951 negotiations the Union, apparently recognizing that the 6400 Mt. Elliott Avenue address of the company in the 1947 agreement made it inapplicable to the experimental plant, and wishing to include the experimental plant in the 1951 agreement, proposed to delete the 6400 Mt. Elliott Avenue address from the preamble of the agreement and to change the wording of the paragraph dealing with recognition of the Union so as to make the agreement apply to all employees of Gemmer Manufacturing Company in the greater Detroit area. The company rejected this proposal but did change the wording of the recognition clause so as to apply to its employees in "its plant or plants which are located in that portion of the greater Detroit area which is located within the city limits of Detroit."

This same language was again used in the bargaining agreement executed September 1, 1955, and expiring June 1, 1958. During the term of the 1955–1958 bargaining agreement Gemmer Manufacturing Company was acquired by the defendant.

In the negotiations leading up to the 1958 bargaining agreement the Union again proposed that the recognition clause be changed so as to apply to the Company's employees in the greater Detroit area, not restricted to the city limits. It also submitted a proposal that in the event the company moved its operations to other locations, the Union would be recognized for the purpose of collective bargaining on the matters of wages, hours and conditions of employment and that certain problems involved, including moving costs and seniority transfers, be subject to negotiations. These proposals were rejected and the language in the 1955 agreement was again used.

It will be noticed that following the first notice to employees on January 13, 1961, about the new Tennessee division, the Union in its letter of January 25, 1961, to the Company made no claim of seniority rights with respect to employment at the Tennessee plant under the 1958 agreement. It merely requested that any employee affected because of the transfer of a job be given an opportunity to go to Lebanon with the job and stated, "We feel you will agree that the long service given by an employee to the Company should be allowed to continue if he is willing to follow the operation to the new company location." It was not until May 9, 1961, following the decision in Zdanok v. Glidden Co., supra, on March 28, 1961, that the Union changed its "request" into a claim that such rights existed under the ruling

in that case. This clearly seems to be a new and different construction of the agreement from that given by the Union to the agreement before this case was decided.

One of the fundamental rules in the construction of contracts is for the court to give great weight to the construction which the parties themselves have given to the contract as shown by their actions thereunder. Reynolds Metals Co. v. Skinner, 166 F.2d 66, 71, C.A. 6th, cert. denied, 334 U.S. 858, 68 S.Ct. 1528, 92 L.Ed. 1778; Begnaud v. White, 170 F.2d 323, 325–326, C.A. 6th.

The judgment of the District Court is reversed and the case remanded to the District Court with instructions to enter a judgment declaring the rights of the parties in accordance with the views expressed herein.