Holden BROWN, George House, and George Wolff

v.

**STERLING ALUMINUM PRODUCTS CORPORATION, a Corporation.**

No. 65 C 61(3).

United States District Court
E. D. Missouri, E. D.

Aug. 18, 1965.

---

Jerome J. Duff, St. Louis, Mo., for plaintiffs.

Daniel Bartlett, Bartlett, Stix & Bartlett, St. Louis, Mo., for defendant.

REGAN, District Judge.

This action, filed February 25, 1965, against Sterling Aluminum Products Corporation (Sterling) by three former employees seeks specific performance and related relief, alleging that Sterling breached a labor agreement. Sterling has moved to dismiss the complaint, setting forth a number of grounds. Plaintiffs have moved for a partial summary judgment. Both motions have been submitted and are now before the Court for disposition. Jurisdiction is asserted under § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185, and the National Labor Relations Act, 29 U.S. C.A. §§ 158 and 159.

The action purports to be brought by plaintiffs "as a bargaining committee as well as for the benefit of themselves as individuals and all persons whose rights are similarly affected who may become parties."

The following facts are alleged in the complaint:

1) International Molders and Foundry Workers Union, Local 59 (Molders Union), of which plaintiffs are members, was at all relevant times the duly certified and recognized "labor relations bargaining agent" of plaintiffs.

2) Sterling operates manufacturing plants in Indiana, Illinois, Michigan, and Missouri, and formerly operated a plant in St. Charles, Missouri, where plaintiffs were employed "through and until February 27, 1963".

3) The Molders Union, as bargaining representative of plaintiffs and other workers employed in the Foundry Department of Sterling's St. Charles plant entered into a collective bargaining agreement with Sterling on April 7, 1961, effective as of March 1, 1961, and which by its terms was to "remain in effect for two years, that is, through February 28, 1963," which was designated the "expiration date."

4) Plaintiffs were at all relevant times the duly elected Chief Committeeman and Shop Committeemen of all Molders Union employees at Sterling's St. Charles plant.

5) Sterling has refused to bargain with plaintiffs "regarding the planning and preparation to close its plant in St. Charles and its actions in closing the said plant." This refusal to "bargain" is alleged to be in "direct violation" of the labor agreement between Sterling and the Molders Union, and plaintiffs are alleged to be "the only qualified persons to commence Grievance Procedures in behalf of Plaintiffs as these procedures are set out in the labor-agreement (Exhibit 'A', Article III, Grievance Procedure, Sections 2, 3, and 4)."

The "Grievance Procedure" set forth in Article III of the Molder Union's contract with Sterling is very limited in scope. It provides that "The *Union* shall be represented in the Shop by a Shop Committee to act with the foreman on *their shift* in trying to adjust any differences that may arise;" that "the employee (or one representative of the employees if there be more than one involved), two shop committeemen from *his shift*, plus the chief committeeman, if needed, and the foreman shall attempt a satisfactory settlement of the grievance;" that "if no satisfactory agreement is reached, the grievance shall be considered by the foregoing persons plus the chief committeeman and the divisional superintendent or his representative, who shall attempt to settle the grievance;" that "if no settlement is reached, the grievance shall be reduced to writing and considered by the foregoing persons, plus the business representative designated by the Union and a representative or officer of the Company," and that "if they are unable to settle the matter, they shall diligently and in good faith explore some other method for the final disposition thereof."

This suit was filed two years after Sterling permanently closed its St.

Charles plant and long after the foremen, divisional superintendents and other employees had departed from the plant. They may not have "vanished" (Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580), but they certainly are no longer in existence at this late date within the concept of the grievance procedure clause. The collective bargaining agreement expired by its terms some two years ago.

In this state of facts, what plaintiffs now seek is an order of specific performance directing Sterling to discuss, through its former foremen on each of the shifts formerly operated at St. Charles (and through the former divisional superintendent or his representative on each shift), the decision of the company, made at the management level over two years ago, to close the plant and terminate plaintiffs' employment. Additionally, plaintiffs pray for an order restoring the "status quo ante to February 27, 1963" of plaintiffs employment by requiring Sterling to pay them all wages and contractual benefits (estimated at $150 per week for 100 weeks for each employee) to which they would have been entitled had not their employment been terminated on February 27, 1963, and to continue to make such payments "until such time as the parties have bargained and negotiated a satisfactory settlement of plaintiffs alleged grievances.

■ We rule and hold that plaintiffs have failed to state a claim upon which this Court can grant relief.

■ The parties to the collective bargaining agreement are Sterling and the Molders Union. The Union is not a party to this action. It is brought by individuals alleged to be former employees of Sterling, for their personal benefit. True, plaintiffs allege that they also bring this suit "as a bargaining committee," presumably because they had been shop committeemen in the St. Charles plant, but their former status as such no more entitles them at this time to sue for specific performance than a former foreman or divisional superin-

tendent. Whatever rights have been granted by Article III of the contract (Grievance Procedure) may be enforced only by and against the Union and the Company, not by the representatives of each through whom they are required to act. The very fact that this suit is directed against the Company, not the foreman and superintendent with whom the "bargaining" is sought, evidences plaintiffs' recognition of the real nature of the contractual provision and at the same time points up the lack of standing of plaintiffs to sue."

We find nothing in Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246, or Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370, which supports the right of these individual plaintiffs to maintain this § 301 action. Those cases, although sustaining the right of an individual employee to sue for a breach of contract, involve rights "uniquely personal". Neither was an action for specific performance. And Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580, merely held that an employee must afford his *union* the opportunity to exhaust grievance procedures before maintaining an action at law for monetary benefits allegedly due him under the contract. Expressly left open by Smith (and not considered in either Moore or Maddox) was the question of an employee's standing to sue in *other* types of actions and particularly as to other contract clauses such as the one here involved.

■ We take particular note of the fact that arbitration is not required by the instant contract, is not requested by plaintiffs, and could not be compelled in any event, even by the Union. Moreover, we also note that the grievance clause contains no specific reference to disputes as to the meaning and application of the contract. Article III pertains to *individual* grievances of a nature which can normally be adjusted at the *shop* level by the foreman on a particular employee's shift, or if necessary by a divisional superintendent. It was not intended to be utilized to process a dispute

between the Union (as the representative of all the employees) and the Company concerning decisions of basic company policy made and implemented at the management level.

It is self-evident that no individual foreman on any one shift (or combination of foremen) could overrule the decision of the company management to shut down or relocate a plant. And certainly no former foreman or superintendent would have this authority two years after the plant had been closed and relocated. Any discussion by plaintiffs with the various foremen, either individually or collectively (and there is no basis in the contract for the latter), would necessarily be entirely fruitless, particularly now that two years have elapsed since the permanent closing of the plant and the termination of plaintiffs' employment.

■ The alleged "grievance" of which mandatory discussion is sought, namely, the closing of Sterling's St. Charles plant, did not come into existence until after the termination of plaintiffs' employment by Sterling. We have not overlooked plaintiffs' allegation that the grievance arose in December of 1962, evidently on the theory that the differences between the parties were created by Sterling's advance plans and preparations to shut down the plant and terminate plaintiffs' employment. However, only the implementation of these plans and preparations could directly affect plaintiffs or create a "difference" within the meaning of Article III, if that Article would otherwise have application. Inasmuch as plaintiffs' employment terminated on February 27, 1963 (accepting as true, for the purpose of the present motion, the allegations of the complaint), plaintiffs are in no position to complain of the subsequent closing of the St. Charles plant or to seek a discussion thereof with the former foremen on their former shifts.

■ To the extent that plaintiffs seek an order requiring "bargaining" over the plant closing, as distinguished from a shop discussion of a grievance, this Court has no jurisdiction to grant such relief. That an employer's failure to bargain respecting plant closing or contracting out work may constitute an unfair labor practice in certain circumstances (Fibreboard Paper Products Corp. v. National Labor Relations Board, 379 U.S. 203, 215, 85 S.Ct. 398, 13 L.Ed. 2d 233; Textile Workers Union of America v. Darlington Manufacturing Co., 380 U.S. 263, 85 S.Ct. 994, 13 L.Ed. 2d 827) is wholly irrelevant. An employer is obligated to "bargain" on these subjects only with the union or the duly recognized or accredited representative of the employees (May Department Stores Co. v. Labor Board, 326 U.S. 376, 383–384, 66 S.Ct. 203, 90 L.Ed. 145), and not with individual members of the bargaining unit or even a group of such members. In any event, a failure to "bargain" in good faith is at most only an "unfair labor practice", which may be prosecuted only before the National Labor Relations Board.

■■ Also beyond the jurisdiction of this Court to grant is the requested order to restore the "status quo ante" pending the "bargaining" and the resolution of the alleged differences. Plaintiffs have cited Fibreboard, but that case involves simply the discretionary power of the National Labor Relations Board to fashion remedies, a power which is expressly granted to the Board by § 10(c) of the National Labor Relations Act, 29 U.S.C.A. § 160(c). This Court cannot do what the Labor Board may do. We have no jurisdiction over complaints by employees of unfair labor practices.

■ Of course, the fact that the particular conduct complained of may constitute an unfair labor practice does not affect our § 301 jurisdiction if the conduct is also violative of a labor contract. But in such instances our right to consider the facts and the relief we may grant is limited to the contract and the violation charged. That is, we consider the conduct not as an unfair labor practice but only insofar as it is alleged to be in violation of the collective bargaining agreement.

284

We have not been cited to a single case which supports the alleged right of plaintiffs to the relief sought in this Court. Specific performance of arbitration agreements has been granted, but the compulsion of arbitration is a far cry from the voluntary composure of the differences by the parties themselves, as contemplated by this contract. Moreover, as we have indicated, by waiting two years after the termination of their employment before bringing this action, plaintiffs are in no position now to seek compulsory discussion with respect to Sterling's decision to close the St. Charles plant. A fundamental change in the relationship of the parties has occurred in the interim which would make the requested "discussion" pointless, even if plaintiffs had standing to obtain such relief.

If plaintiffs are entitled under the contract to employment at any other plant of Sterling, they have a right to assert a claim of that nature, but this is not what they are seeking here. In any event, the agreement, fairly construed, does not give plaintiffs employment rights at other plants. Article I (Recognition) provides: "The Company recognizes the Union as the sole collective bargaining agency for all workers employed in the Foundry Department of the Company's *St. Charles plant* which constitutes the bargaining unit hereinafter referred to * * *" Clearly, the recognition clause limits the rights granted under the contract to the St. Charles plant.

Construing a similar clause, Oddie v. Ross Gear and Tool Company, 6 Cir., 305 F.2d 143, held that the seniority and recall-to-work rights granted by the contract had no application to a plant relocated in another area, even within the term of the contract.

A fortiori, any such rights under this contract have no application to any other existing plant or to one set up elsewhere after the term of the contract.

A further ground of the motion to dismiss is res judicata, based on the following facts: The Molders Union filed a § 301 action in this Court against Sterling on December 20, 1963, alleging a breach of contract based on the recognition and seniority articles of the agreement. The alleged breach of contract was the transfer of Sterling's Foundry Department to Malden, Missouri, laying off all employees in the Foundry Department of the St. Charles plant, hiring new employees for the transferred Foundry Department operations in Malden, and denying to the St. Charles employees recall privileges. That suit was brought on behalf of the Union and on behalf of the employees, including plaintiffs, as defined in the Recognition clause. Thereafter, on August 26, 1964, the case was dismissed with prejudice to plaintiff and with plaintiff's costs.

Sterling argues that all of the claims asserted in or within the ambit of the present case were embraced in the former suit brought by the Union both on its own behalf and as agent for its members, and that the dismissal with prejudice constitutes an adjudication on the merits barring the present suit. However, in view of the disposition we have made of the motion to dismiss on other grounds thereof, it is not necessary to decide the issue of res judicata.

Our ruling sustaining Sterling's motion to dismiss is necessarily determinative of plaintiffs' motion for a partial summary judgment. In addition, even if this Court could otherwise compel Sterling at the suit of plaintiffs to make its former foremen and divisional superintendents available for the futile purpose of going through the motions of "discussing" the plant closing, the record is insufficient to show that there is no genuine issue as to any material fact.

In view of the foregoing, plaintiffs' motion for partial summary judgment is overruled and defendant's motion to dismiss is sustained. The Clerk is directed to enter judgment in accordance herewith dismissing plaintiffs' complaint at plaintiffs' costs.