Holden BROWN, George House and George Wolff, Appellants,

v.

STERLING ALUMINUM PRODUCTS CORPORATION, a Missouri Corporation, Appellee.

No. 18218.

United States Court of Appeals
Eighth Circuit.

Sept. 12, 1966.

Rehearing Denied Oct. 7, 1966.

Jerome J. Duff, St. Louis, Mo., for appellants.

Daniel Bartlett, Sr., of Bartlett, Stix & Bartlett, St. Louis, Mo., for appellee. William Stix and Daniel Bartlett, Jr., St. Louis, Mo., were with him on the brief.

Before VAN OOSTERHOUT, BLACKMUN and GIBSON, Circuit Judges.

GIBSON, Circuit Judge.

The appellants, Holden Brown, George House and George Wolff, as plaintiffs filed a complaint in the District Court

for the Eastern District of Missouri, against Sterling Aluminum Products Corporation (hereinafter referred to as "Company"), a Missouri corporation, engaged in activities which affect interstate commerce under the provisions of the Labor Management Relations Act, 1947 (Act) 29 U.S.C. § 141 et seq., claiming a breach by the Company of a collective bargaining agreement (Agreement). The three plaintiffs were members of the employees' Shop Committee created under the agreement executed by the Union with the Company, and they claim the sole right to institute this proceeding as a class action, based on § 301 of the Act [1] (29 U.S.C. § 185).

The District Court, after considering the matter on plaintiffs' motion for order of partial summary judgment and defendant's motion to dismiss, entered an order and judgment dismissing the complaint on the bases "that plaintiffs have failed to state a claim upon which this court can grant relief," that it did not have jurisdiction to grant the relief sought by plaintiffs, and laches. A motion for new trial was overruled and a timely appeal was taken to this Court.

The factual background of the complaint is as follows: The Company maintains and operates manufacturing plants in several states, including Missouri. Its plant at St. Charles, Missouri, was closed February 28, 1963 and similar operations commenced at a new location in Malden, Missouri. The plaintiffs were employed in the Foundry Department of the St. Charles plant, which department constituted a bargaining unit represented by the International Molders and Foundry Workers Union of North America, Local No. 59 AFL–CIO (Union).

The Union and Company had entered into a collective bargaining agreement for a two-year period effective March 1, 1961 and extending through February 28, 1963. On December 26, 1962, the Company gave notice of termination of this agreement on the expiration date, February 28, 1963, in accordance with the provisions of the termination clause contained in Article XIV of the agreement and also in conformity with § 8 (d) (1) of the Act (29 U.S.C. § 158(d) (1)).[2] Upon being advised of the Company's decision to terminate the agreement because of the Company's proposed and intended termination of all operations at its St. Charles plant and renewal or relocation of operations at Malden, Missouri, the plaintiffs, as members of the Shop Committee, attempted to bargain with the Company respecting its intention to relocate its plant. This attempt to bargain was before the agreement had expired, but the Company refused to so bargain. All foundry unit employees (approximately 220), together with all other units of employment at the St. Charles plant, were terminated on their contract termination dates, and the Company then commenced new operations at Malden, Missouri.

No unfair labor practice was filed with the National Labor Relations Board relative to the Company's unilateral action in closing the St. Charles plant and relocating at Malden, but the Union filed a suit against the Company on December 26, 1963, in the District Court for the Eastern District of Missouri, based on the relocation of the Company's plant, asserting a breach of the agreement in denying recall privileges, pursuant to

---

1. All sectional references in this opinion are to sections of the Labor Management Relations Act, 1947, as amended (29 U.S.C. § 141 et seq.)

2. The part of § 8(d) (1) pertinent to this notice reads as follows:

"* * * *  Provided, That where there is in effect a collective-bargaining contract covering employees in an industry affecting commerce, the duty to bargain collectively shall also mean that no party to

such contract shall terminate or modify such contract, unless the party desiring such termination or modification—

"(1) serves a written notice upon the other party to the contract of the proposed termination or modification sixty days prior to the expiration date thereof, or in the event such contract contains no expiration date, sixty days prior to the time it is proposed to make such termination or modification;"

Article V, § 3(f) of said agreement. This suit, No. 63 C 450(c), was dismissed under a stipulation for dismissal with prejudice to the Union plaintiff and at plaintiff's costs on August 26, 1964.

Plaintiffs assert the right to file this action on behalf of themselves as members of the Shop Committee and on the behalf of all other employees in their bargaining unit similarly situated on the basis of §§ 8, 9 and 301 of the Act. They contend that their prospective loss of employment through the relocation of the plant gave rise to a grievance, on which they unsuccessfully sought to bargain with the Company under an agreement, and that since the Company refused to so bargain, the Court under the statutory provisions mentioned should enter an order directing the Company, "To commence to attempt a satisfactory settlement of the various grievances alleged herein by bargaining with the plaintiffs * * * as provided in Article III, Sections 3 and 4 of the labor agreement"; and they also request the Court to restore the *status quo ante* to February 27, 1963 of the plaintiffs' employment by payment to plaintiffs and other employees in their unit $150 per week plus accrued interest and that such pay and contractual benefits be paid until such time as the parties have bargained and negotiated a satisfactory disposition of the grievances set out in the complaint. In their motion for partial summary judgment plaintiffs requested that the amount of $1,185,000 representing approximately one-half of the gross back wages claimed owing to approximately 220 employees for 110 weeks be secured by the posting of collateral by the Company.

The Company's motion to dismiss the complaint alleges: (1) lack of jurisdiction over the subject matter; (2) the remedies sought by plaintiffs are within the exclusive jurisdiction of the National Labor Relations Board; (3) limitations imposed by § 160(b) of the Act (6 months); (4) laches; (5) failure to state a claim upon which relief can be granted by the court; (6) *res judicata* based on the Union's suit against the Company, which was by stipulation dismissed with prejudice, and (7) plaintiffs' lack of capacity to sue for the relief sought.

The District Court (Honorable John K. Regan) in a memorandum opinion filed August 18, 1965 (246 F.Supp. 279) overruled plaintiffs' motion for partial summary judgment, sustained defendant's motion to dismiss and entered judgment accordingly. The basis for the opinion was that plaintiffs had failed to state a claim upon which the Court could grant relief. The Court in its opinion pointed out that the agreement was between the Company and the Molders Union, and the Union was not a party to this action; that the plaintiffs as former members of the Shop Committee were not entitled at this time to sue for specific performance; that whatever rights were granted by Article III (grievance procedure) may be enforced only by the Union; and that the plaintiffs lacked standing to sue. The Court also pointed out that arbitration is not required by the agreement and could not be compelled in any event, even by the Union, since the agreement contains no reference to arbitrating any grievance or even dispute concerning the meaning and interpretation of the agreement; there is no provision for compulsory arbitration but only for the voluntary composure of the differences between parties themselves; that the alleged grievances of the plant closing did not come into existence until after the agreement terminated; and finally that laches would apply as a bar, because the plaintiffs by waiting two years to bring this action are not now in a position to seek compulsory discussion with respect to the closing of the plant, since a fundamental change of the relationship of the parties has occurred in the interim, which would make the requested discussion useless. The Court did not rule

on the *res judicata* defense as its other rulings were dispositive of the case.

The first question for determination is whether the District Court had jurisdiction to rule upon this dispute. Section 301(a) of the Act (29 U.S.C. § 185) clearly allows the Union to file a suit for an alleged breach of the collective bargaining agreement.[3] Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). The law clearly recognizes that in a given factual situation a particular act may be an unfair labor practice as defined by the Act and at the same time constitute a breach of the collective bargaining agreement between the parties. Any complaint about an unfair labor practice, of course, must be directed to the National Labor Relations Board. The Court of Appeals only reviews the findings of the Board with a duty to order enforcement if warranted by substantial evidence on the record. However, if the factual situation also gives rise to a breach of contract action, the aggrieved party is not limited to the National Labor Relations Board. The District Courts have original jurisdiction under § 301 to pass upon this contractual dispute independent of any unfair labor practice. As stated in Smith v. Evening News Association, 371 U.S. 195, 197, 83 S.Ct. 267, 269, 9 L.Ed.2d 246, (1962), "* * * The authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and does

not destroy the jurisdiction of the courts in suits under § 301." See, Carey v. General Electric Company, 315 F.2d 499 (2 Cir. 1963), cert. denied 377 U.S. 908, 84 S.Ct. 1162, 12 L.Ed.2d 179.

The question of an unfair labor practice[4] is not before us. The National Labor Relations Board has sole and exclusive original jurisdiction to determine whether the Company's actions violated their duties under the Act, and the Courts have no original jurisdiction to make such a determination. Our sole function is to determine if the plaintiffs are entitled to relief under the specific contractual provisions contained in the collective bargaining agreement.

Though it is well established that a Union may prosecute a breach of contract action under § 301 even though the breach may also involve an unfair labor practice, the right of the individual members of the Union to file this suit independently of the Union has been questioned.

Under certain restricted circumstances the law clearly allows the individual members of the Union to bring an action under § 301 to enforce their individual rights. Smith v. Evening News Association, supra; Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); Belk v. Allied Aviation Service Company of New Jersey, Inc., 315 F.2d 513 (2 Cir. 1963), cert. denied Rogers v. Allied Aviation Service Co., 375 U.S. 847, 84 S.Ct. 102, 11 L.Ed.2d 74. These cases allow the individual enforcement of rights secured under a collective bargaining agreement after certain prerequisites have been met, such as seeking use of established grievance machinery and affording the Union a chance to act on

---

3. § 301
   "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect

to the amount in controversy or without regard to the citizenship of the parties."

4. "§ 8 Unfair Labor Practices
   "(a) It shall be an unfair labor practice for an employer—
   "(5) to refuse to bargain collectively with the representative of his employees, subject to the provisions of section 159(a) of this title."

their behalf. If these conditions precedent to filing the suit have been met, no one could seriously contest the plaintiff's right to individually enforce any contractual rights acquired under the agreement and sue for any breach by the Company that occurred during the term of the agreement, such as unpaid salary or other monetary claims.[5]

We believe, however, that for an individual to bring an action under § 301 he must be seeking to enforce a right that is personal to him and vested in him at the time of the suit. Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). Therefore, individual suits to compel arbitration of individual grievances are permissible as are individual suits to enforce an arbitration award in which the individual has a personal interest. Smith v. Evening News Association, supra. However, whenever the right sought to be enforced is not uniquely personal to the individual but is a right possessed by the bargaining unit as a whole, only the Union as the sole representative of that unit would normally have the standing to enforce the right. Thus the individual would have no standing to compel discussion of broad collective bargaining principles such as the re-negotiation of a new contract or the re-location of a plant, even if such discussion were required by the existing collective bargaining agreement. Section 159(a) of the Act designates the representatives selected by a majority of the employees in a unit, which in most cases would be a Union, to "be the exclusive [elected] representatives of all the employees in [that] unit for the purposes of collective bargaining." It is the Union alone that has the right to bargain with management on these broad policy issues. May Department Stores Co. v. N. L. R. B., 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145 (1945). Any failure to discuss these matters according to the contract is a violation of the collective rights of the entire unit and not of the personal rights of the individual members. In absence of contrary contractual provisions, it does not appear that the individual employees have a vested interest in the Company's operation being conducted in St. Charles, and, therefore, under the circumstances the Company may close the St. Charles operation completely and relocate elsewhere as its economic judgment dictates without incurring individual liability to each of its employees. Oddie v. Ross Gear and Tool Company, 305 F.2d 143 (6 Cir. 1962), cert. denied 371 U.S. 941, 83 S.Ct. 318, 9 L.Ed.2d 275.

Even were we to assume that appellants have standing to prosecute this action, we do not believe the agreement entitles appellants to the relief they are seeking. There are two reasons for our belief. One, the agreement does not compel the Company to arbitrate any issue, and two, the agreement does not make this an arbitrable type of issue.

Turning to the agreement in question, it contains in Article IV a No Strike Agreement which is the *quid pro quo* for management's obligations under the Agreement. Article III, on the Grievance Procedure, provides in its essential parts for the adjustment of grievances in a limited fashion and provides three steps, as follows:

"(1) The Union shall be represented in the shop by the Shop Committee to act with the Foremen in trying to adjust any differences that may arise,

---

5. The plaintiffs' original complaint in paragraph 5(d) claims that plaintiffs were not paid in full for the vacation credits that they were entitled to under the agreement. They would clearly have a right to sue for these benefits after processing their claim through the grievance procedure set up in the agreement. However, the Company's refusal to process this issue might excuse the employees from exhaustion of the grievance procedure set up in the agreement. United Steelworkers of America, AFL-CIO v. American International Aluminum Corp., 334 F.2d 147 (5 Cir. 1964).

We are, however, assuming that plaintiffs have abandoned or waived this issue of accrued vacation pay because no relief was sought in connection therewith or monetary damages claimed.

and commands the Foremen to attempt satisfactory settlement of the grievance;

"(2) If no satisfactory settlement is reached at stage one, the grievance shall then be considered by the employee, two Shop Committeemen from his shift, plus the Chief Committeeman and the Divisional Superintendent or his representatives, who shall attempt to settle the grievance. The Company shall designate one of its representatives on each shift to discuss and settle any controversy or any grievance that may arise from time to time;

"(3) If no settlement is reached, the grievance shall be reduced to writing and considered by the parties above named, plus the business representative designated by the Union and a representative or officer of the Company. *If they are unable to settle the matter, they shall diligently and in good faith explore some other method for the final disposition thereof.*" (Emphasis supplied)

There is no agreement contained within the collective bargaining contract to submit any question of interpretation of the contract to arbitration, nor is there any agreement to settle disputes thereunder by submission to an arbitrator or some other board.

The cases of which we are aware clearly allow the specific enforcement of an agreement to arbitrate and compel implementation of an arbitration award. Textile Workers Union of America v. Lincoln Mills of Alabama, supra; Smith v. Evening News Association, supra; United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Builders Association of Kansas City v. Greater Kansas City Laborers District Council, 326 F.2d 867 (8 Cir. 1964), cert. denied 377 U.S. 917, 84 S.Ct. 1182, 12 L.Ed.2d 186; Minnesota Joint Board, etc. v. United Garment Mfg. Co., 338 F.2d 195 (8 Cir. 1964); United Brick & Clay Workers of America v. A. P. Green Fire Brick Co., 343 F. 2d 590 (8 Cir. 1965); Fibreboard Paper Products Corporation v. East Bay Union of Machinists, 344 F.2d 300 (9 Cir. 1965), cert. denied 382 U.S. 826, 86 S.Ct. 61, 15 L.Ed.2d 71.

Appellants herein, however, are not seeking the specific enforcement of a compulsory arbitration contract. They are seeking the specific enforcement of the general agreement to discuss grievances. Unlike the cases cited above, the equity powers of the Federal courts should not be used to specifically enforce a contract under § 301 that merely requires the parties to discuss their differences. It thus appears that there is a fatal defect in the collective bargaining agreement, itself, in that there is no provision for compulsory arbitration, which would be the only method of finally settling disputes thereunder, absent agreement and absent submission to the courts. Therefore, we believe that a binding agreement to submit a dispute to arbitration or a final and binding arbitration award is a predicate to granting the kind of relief plaintiffs are seeking under § 301. See, General Drivers etc. Union No. 89 v. Riss & Company, Inc., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963).

The second reason why plaintiffs could not be afforded relief under this contract is that the grievance procedure set out in the contract does not cover this type of dispute. It is true that United Steelworkers of America, AFL-CIO v. Warrior & Gulf Navigation Co., 363 U.S. 574, at page 578, 80 S.Ct. 1347, at page 1351, 4 L.Ed.2d 1409 (1960) provides that the collective bargaining agreement is more than a contract, " * * * it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate." And at page 581, 80 S.Ct. at page 1352:

"Apart from matters that the parties specifically exclude, all of the ques-

tions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement."

Nonetheless, we think it is patently clear that the renegotiation of a new contract or policy questions on plant relocation could not be settled by the foremen or any representative of the Company appointed to hear individual grievances as contemplated by the procedure set up in this agreement. It is obvious that the grievance machinery set up in the contract was intended to cover day-by-day disputes involving working conditions, safety hazards, etc. Bargaining over broad questions of policy is vested solely in the Union. May Department Stores Co. v. N. L. R. B., supra. Construing the collective bargaining agreement most liberally, the type of grievance here pled, a plant relocation upon termination of a collective bargaining agreement, is in no way contained within the framework of the agreement. The employer has no duty to arbitrate issues that it has not agreed to arbitrate and whether arbitration is required under the collective bargaining agreement is a legal issue for the Court to decide. See John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, at page 547, 84 S.Ct. 909.

We, therefore, agree with the District Court, that the complaint fails to state a claim upon which the District Court could grant relief.

There are serious questions of whether the Union suit is *res judicata* on the issue here involved, and also whether or not the doctrine of laches should be applied. Inasmuch as these questions are not necessary for determination of the case, we will not attempt to deal with these problems in this opinion.

We affirm the District Court in granting judgment against plaintiffs. This disposition of the case renders unnecessary discussing the relief requested.

Judgment affirmed.