**LOCAL 1251, INTERNATIONAL UNION OF UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA et al., Plaintiffs,**

v.

**ROBERTSHAW CONTROLS COMPANY, Defendant.**

**Civ. No. 10409.**

United States District Court
D. Connecticut.
July 28, 1967.

John Arcudi, Arcudi & Green, Bridgeport, Conn., for plaintiffs.

Williams & Smith, Bridgeport, Conn., for defendant.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

This action, brought by the plaintiff union and certain of its individual members on behalf of themselves and other employees similarly situated, seeks damages for an alleged breach of a collective bargaining agreement between the union and Lux Clock Manufacturing Company, Inc. (Lux). The defendant, Robertshaw Controls Company (Robertshaw) is a Delaware corporation which acquired the assets of Lux in July of 1961. Lux was not served and is not a party to this action.[1]

Jurisdiction of the Court has been invoked under 29 U.S.C. § 185. See, Smith v. Evening News Assn., 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); International Union, United Auto, Aerospace and Agr. Implement Workers of America v. Hoosier Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). There being no genuine issue of material fact, the parties have filed cross-motions for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure.

The individual plaintiffs claim they are members of a class of former employees of Lux who suffered damages by the failure of Lux to honor seniority rights under a collective bargaining agreement entered into between Lux and the union on April 10, 1960. They were discharged during the term of the agreement when Lux transferred certain of its operations from Waterbury, Connecticut to Lebanon, Tennessee. The plaintiffs contend that under the terms of the agreement they had a right to recall with seniority at the Tennessee plant. The defendant, on the other hand, claims members of the bargaining unit at Waterbury had no right to recall at plant locations outside Waterbury and that their seniority rights were confined to Lux operations in that city. The defendant further argues that, whatever the liability of Lux to the plaintiffs, it has not assumed that liability through its purchase of Lux assets.

Lux was a Connecticut corporation engaged in the manufacture of clocks in Waterbury, Connecticut. In the 1950's it periodically relocated certain of its operations to Lebanon, Tennessee. In 1953 some 150 to 200 employees were laid off when Lux transferred its "alarm clock" operations to Lebanon; in 1954 and 1955, the removal of three other departments from the Waterbury plant ("Eastman", "Piercing and Welding" and "Mechanical Minute Minder") resulted in further layoffs. These relocations occurred prior to the time the plaintiff union became the bargaining agent for Waterbury employees.

In April, 1956, while negotiating its first contract with the union, and in October, 1957, during the term of the 1957 collective bargaining agreement,

---

[1]. Leave to serve and add Lux as a new party defendant was denied by this Court on March 23, 1967.

Lux continued to transfer certain of its operations to Lebanon, resulting in more layoffs in Waterbury. During the term of the 1959 labor contract, the company moved other divisions out of Waterbury to its plants in Lebanon and in Canada.

Despite these periodic transfers of operations from the Waterbury plant to the Lebanon plant, at no time prior to 1961 did contract negotiations between Lux and the union include requests by the union that laid off employees be given priority rights at Lebanon or severance pay. No changes were sought in the "Recognition" clause or the "Rights of Management" provisions of the collective bargaining agreements.

In 1960, the union for the first time included in its contract proposals a request for severance pay for employees discharged as a result of transfer of operations to Lebanon. Lux rejected the proposal and the contract was eventually signed without the provision. In these negotiations there was no demand that laid off employees be given seniority rights at Lebanon.

The layoffs which gave rise to this lawsuit occurred between March 27, 1961 and April 3, 1961, during the term of the 1960 contract and while negotiations for the 1961 agreement were in progress. Lux refused to grant severance pay to those employees being released during this period of time. However, as part of the new 1961 collective bargaining agreement, Lux agreed to give severance pay to those employees laid off after May 10, 1961. As in the past negotiations, the union did not attempt to provide seniority rights for discharged Waterbury employees at Lebanon.

On May 17, 1961, defendant Robertshaw contracted with Lux to acquire its assets and on July 17, 1961 the acquisition was consummated. Although employees were laid off during the term of the 1961 labor agreement there is no claim that either Lux or Robertshaw violated this contract.

The main issue presented by the parties' motions for summary judgment is whether the plaintiffs have seniority or recalled rights to employment at Lebanon, Tennessee under the 1960 collective bargaining agreement. In view of the Court's ruling on this question, it will be unnecessary to consider the question whether Robertshaw, by acquiring Lux assets in 1961, assumed the liability of Lux to the plaintiffs under the 1960 labor contract.

Plaintiffs concede the only rights they claim have been violated arise under the 1960 agreement. Article 6 of the agreement provides:

"Section 1. Seniority is the relative status of employees with respect to continuous company service unbroken by discharge, voluntary termination or layoff exceeding one year in the case of employees with less than five years seniority and two years in the case of employees with five or more years seniority. * * *"

"Section 10. Employees laid off will be placed on a recall list in the order of their company continuous service. When jobs are available in a department from which regular employees have been permanently laid off, or in a department having similar jobs, regular employees on the recall list will be recalled in inverse order of layoff provided they have ability to perform the jobs available. However, employees who have accepted transfers out of their occupational classifications in lieu of layoff will have recall rights to their occupational classifications when openings occur in accordance with their seniority rights."

The parties agree that Waterbury employees had a right to recall at the Waterbury plant. But the plaintiffs submit that these provisions of the agreement also granted Waterbury employees discharged between March 27, 1961 and April 3, 1961 the right to recall to new jobs in Lebanon. The defendant contends, on the other hand, that the right to recall was limited to employment at the Waterbury plant and in no way was applicable to jobs at the Lebanon factory. As a consequence neither Lux nor the defendant Robertshaw has transferred

the laid off employees to Lebanon or, in lieu of transfer, awarded severance pay.

The 1960 contract, as well as all previous contracts between the parties, contained the following "Recognition" and "Rights of Management" provisions:

> "Recognition
>
> The Company recognizes the Union as the exclusive representative of all production and maintenance employees, including Stock Clerk, of the Company *in its Waterbury Plants* for the purpose of collective bargaining in respect to wages, hours, and other conditions of employment." (Emphasis added.) Article III, Section 1.
>
> \* \* \* \* \* \*
>
> "Management
>
> Except as otherwise specifically provided in this Agreement, nothing herein contained shall be construed as limiting or restricting the right of the Company to manage and direct the working force, including the right to hire, \* \* \* to release employees from duty because of lack of work or other legitimate reasons, to determine products to be manufactured, to extend, limit or curtail its operations when in its sole discretion it may deem it advisable to do so, to decide the extent and location of its operation, \* \* \*." Article V, Section 1.

John M. Wrenn, a member of the union's negotiating committee, testified in his deposition that he knew the union was recognized by contract specifically at the Waterbury plant and "nowhere else." Dep., Wrenn, p. 68. Mrs. Agnes M. Lynn, another member of the union's negotiating committee, not only testified to the same effect but admitted that the union had attemped to organize a bargaining unit for Lebanon employees. Moreover, she testified that the union never represented employees of the company at any location other than Waterbury. Dep. Lynn, pp. 14–15.

In Oddie v. Ross Gear and Tool Company, 305 F.2d 143 (6 Cir. 1962), cert. denied, 371 U.S. 941, 83 S.Ct. 318, 9 L.Ed.2d 275 (1962), on facts strikingly analogous to those of the instant case, the court held that seriority and recall rights of employees were limited to company operations in the location designated in the recognition clause of the contract in dispute. Employees who lost their jobs when company operations were transferred to another city did not retain seniority rights to corresponding jobs in the new location. The recognition clause in the *Ross Gear* contract provided:

> "RECOGNITION
>
> 1. The Company recognizes the union as the exclusive representative of its employees in its plant or plants which are located in that portion of the greater Detroit area which is located within the city limits of Detroit for the purpose of collective bargaining on matters of wages, hours and conditions of employment, excluding those mentioned in the next succeeding paragraph." 305 F.2d at 147.

Stating that the contract must be construed as written, the court said the "plain, unambiguous language" of the clause gave seniority and recall rights to employees only at plants located within the city limits of Detroit. "It gave no such rights to employees of a plant in Tennessee." 305 F.2d at 148.

Applying this reasoning to the facts of the instant case, it is clear that the language of the recognition clause in the 1960 collective bargaining agreement must be construed to limit plaintiffs' seniority and recall rights to the Lux plant in Waterbury. It did not give these employees such rights in the Lebanon factory. Concededly, Lux and the defendant, under Article V, had the right to transfer certain operations from the Waterbury factory to the Lebanon plant. It is apparent here, as in *Ross Gear*, therefore, that there was no impairment of contract rights when management exercised its prerogative to transfer some of its operations elsewhere. The Court must construe the contract as written,

rather than make a new contract for the parties. Oddie v. Ross Gear and Tool Company, supra, at 148; Standard Oil Co. v. Ogden and Moffett Co., 242 F.2d 287, 291–292 (6 Cir. 1957); Dura Electric Lamp Co. v. Westinghouse Electric Corp., 249 F.2d 5, 7 (3 Cir. 1957).

Realizing the persuasiveness of the *Ross Gear* decision in this case, the plaintiffs argue that the two *Glidden* cases, decided by the Court of Appeals for this Circuit, represent contrary rulings which require this Court to reject *Ross Gear*. They submit that the *Glidden* rulings fully entitled them to summary judgment. The Court disagrees.

Judge Friendly in *Glidden II*, Zdanok v. Glidden Company, Durkee Famous Foods Division, 327 F.2d 944 (2 Cir. 1964), discusses in detail the history of this much litigated case, which makes extended review here unnecessary. In *Glidden I*, Zdanok v. Glidden Company, 288 F.2d 99, 90 A.L.R.2d 965 (2 Cir. 1961), the Court of Appeals, Chief Judge Lumbard dissenting, held that the provisions of a labor contract, similar to those in the instant case, entitled Glidden's employees at Elmhurst to seniority in reemployment at the company's new plant in Bethlehem, Pennsylvania, to which Glidden had transferred almost all its operations. Liability decided, the case was remanded to the District Court to determine the plaintiffs' damages. Thus, standing alone, *Glidden I* lends clear support to the present plaintiffs' cause.[2]

*Glidden I* was appealed to the Supreme Court on the limited issue of the participation of a judge of the Court of Claims on the Court of Appeals panel, 368 U.S. 814, 82 S.Ct. 56, 7 L.Ed.2d 22 (1961), which participation was approved, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962).

On remand, Glidden offered additional factual evidence, not presented in the initial trial, to establish that the contract should not be construed to provide the Elmhurst employees with rights to reemployment at Bethlehem. Although Judge Palmieri found "that the parties entertained no expectation that the employees' rights would survive the removal of the Elmhurst plant to another state," he concluded he was "bound by the Court of Appeals' interpretation notwithstanding the import of the evidence referred to." D.C., 216 F.Supp. 476 at 480.

On appeal in *Glidden II*, the Court of Appeals, rejecting Glidden's new evidence as improperly admitted, held the decision on liability in *Glidden I* should be followed as "the law of the case," and affirmed. However, Judge Friendly, adverting to the great amount of critical discussion engendered by *Glidden I*, stated that the *Ross Gear* decision has created "doubt whether, if other similar contracts should come before us for construction," the same result would be reached. 327 F.2d at 952. Chief Judge Lumbard, concurring, made it clear that *Glidden I* was "entitled to no precedential value so far as this circuit is concerned." 327 F.2d at 957.

In the instant case, the plain language of the collective bargaining agreement grants the plaintiffs no enforceable rights to employment outside Waterbury. Further, the uncontroverted facts concerning the course of dealings and negotiations between the employer and the union, as noted hereinbefore, demonstrate convincingly that no seniority rights were intended for Waterbury employees at Lebanon. Under these circumstances, the *Glidden* cases are distinguishable and not controlling. See Woody v. Sterling Aluminum Products, Inc., 243 F.Supp. 755, 776–777 (E.D.Mo. 1965), aff'd, sub nom., Brown v. Sterling Aluminum Products Corporation, 365 F.2d 651 (8 Cir. 1966).

Accordingly, defendant's motion for summary judgment is granted.

2. Whether the fact that in *Glidden* the transfer of operations amounted to a "close-down" while in the instant case only 30 percent of the labor force was affected, sufficiently distinguishes the two cases to justify disparate rulings, as the defendant here argues, is doubtful.