### John Wayne HARRIS, Plaintiff–Appellant,

v.

### ALUMAX MILL PRODUCTS, INC.; Andrew Meyers; United Steelworkers of America, Defendants–Appellees.

No. 88–6434.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1989.

Decided Feb. 26, 1990.

disfavor." *Id.*

Gary S. Redinger, San Bernardino, Cal., for plaintiff-appellant.

Renee Turkell, Seyfarth, Shaw, Fairweather & Geraldson, Los Angeles, Cal., for defendants-appellees.

Before WALLACE, PREGERSON and ALARCON, Circuit Judges.

WALLACE, Circuit Judge:

Harris appeals from the district court's summary judgment in favor of Alumax Mill Products, Inc. and Myers (collectively Alumax). The district court concluded that Harris's state law claims were preempted by section 301 of the Labor–Management Relations Act, 29 U.S.C. § 185 (section 301), and time-barred under the six-month statute of limitations period applicable to section 301 actions of this kind. The district court exercised jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 185. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

I

From July 27, 1978, until he was deemed to have voluntarily quit on June 27, 1983, Harris was employed by Alumax. Harris

is a member of the United Steelworkers of America, AFL–CIO (Union). The terms and conditions of his employment were governed by the collective bargaining agreement (Agreement) between Alumax and the Union. The Agreement was in force during all events relevant to this action.

Pursuant to Article III of the Agreement, Alumax was expressly authorized to establish work rules. The Agreement also provided that the application of any such work rule was subject to the Agreement's multi-step grievance procedure. One rule promulgated by Alumax was an attendance policy, which provided that an employee who was absent from work for three consecutive days without reporting his absence to Alumax was deemed to have terminated his employment voluntarily.

On June 19, 1983, Harris was injured in an industrial accident at Alumax. He was taken to a medical clinic by his foreman and was examined by a physician who provided him with written authorization to be absent from work until June 22. However, by June 27 Harris had neither reported to work nor notified Alumax regarding any need to be absent for longer than the days which had been authorized. In accordance with its attendance policy, Alumax deemed Harris to have quit his employment voluntarily on June 27, 1983, because he had been absent for more than three consecutive work days without notifying Alumax. Alumax then sent Harris a telegram informing him that his unreported absences had resulted in his voluntary termination.

Upon learning of his termination, Harris contacted a Union representative and requested that the Union file a grievance with Alumax on his behalf. On July 13, 1983, the representative informed Harris that the Union would not pursue his grievance. Sometime later, Harris filed a claim with the California Worker's Compensation Appeals Board. This claim was settled on April 13, 1984.

On May 8, 1984, more than ten months after his termination, Harris filed the present action against Alumax in California state court, alleging state claims for breach of the covenant of good faith and fair dealing and for intentional infliction of emotional distress.

After extensive procedural maneuvering, Harris filed an amended complaint on January 14, 1988, adding the Union as a defendant. Alumax removed the action to federal district court. Upon Alumax's subsequent motion, the district court entered summary judgment against Harris, concluding that his state law claims were preempted under section 301 and time-barred under the applicable statute of limitations and that, in any event, Harris's claims should be dismissed for failure to exhaust his available grievance procedures. The district court also dismissed without prejudice the action against the Union for failure to serve the Union within the time limit prescribed by Fed.R.Civ.P. 4(f). Harris then filed this appeal.

## II

We review the district court's summary judgment de novo to determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Ashton v. Cory*, 780 F.2d 816, 818 (9th Cir.1986). We first address whether Harris's state law claims are preempted by section 301. This question is one of subject matter jurisdiction which we review de novo. *Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044, 1048 (9th Cir.) (*Stallcop*), *cert. denied*, 484 U.S. 986, 108 S.Ct. 504, 98 L.Ed.2d 502 (1987).

Harris's first amended complaint alleges three distinct claims. His first claim is against Alumax for breach of the covenant of good faith and fair dealing and for wrongful termination. His second claim is against the Union for breach of its duty of fair representation. His final claim is against Myers, Alumax's personnel manager, for intentional infliction of emotional distress.

The Supreme Court has clearly stated that "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of

state law ... is pre-empted and federal labor-law principles—necessarily uniform throughout the nation—must be employed to resolve the dispute." *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988) (*Lingle*); *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 210, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985) (*Lueck*). Thus, in order to determine whether Harris's state law claims are pre-empted, we must decide whether their resolution requires the interpretation of the Agreement. *Lingle*, 108 S.Ct. at 1885.

Harris's claim that Alumax violated the covenant of good faith and fair dealing is clearly dependent on the terms of the Agreement. The Agreement expressly provides for an employee to grieve any discharge or application of work rules, and Harris's complaint focuses exclusively on his allegedly wrongful termination resulting from Alumax's application of its attendance policy—a work rule. In addition, in his complaint, Harris explicitly states that the implied covenant of good faith and fair dealing is found in "the Union written contract of employment between Alumax Mill Products, Inc., and United Steelworkers of America." Thus, by Harris's own allegation, his claim for breach of the implied covenant of good faith and fair dealing requires the interpretation of the Agreement. We therefore conclude that this claim is completely preempted by section 301. *Id.; Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1286 (9th Cir.1989) (*Chmiel*) (finding preempted a claim for breach of the implied covenant of good faith and fair dealing); *Scott v. Machinists Automotive Trades District Lodge No. 190*, 827 F.2d 589, 591–92 (9th Cir.1987) (same).

Harris's claim for intentional infliction of emotional distress arises out of the same conduct which formed the basis for his claim of breach of the covenant of good faith and fair dealing. In essence, he alleges that he suffered emotional distress because he was discharged without just cause. Thus, this claim also is preempted. *Chmiel*, 873 F.2d at 1286 (claim for intentional infliction of emotional distress

preempted by section 301); *Stallcop*, 820 F.2d at 1049 (same); *Newberry v. Pacific Racing Association*, 854 F.2d 1142, 1149–50 (9th Cir.1988) (same); *Olguin v. Inspiration Consolidated Copper Co.*, 740 F.2d 1468, 1475–76 (9th Cir.1984) (*Olguin*) (same).

Harris argues that his discharge resulted from the application of Alumax's attendance policy and not the Agreement itself. However, Alumax was authorized to establish the attendance policy by Article III of the Agreement, which also provided that the application of such a work rule was subject to the Agreement's multi-step grievance procedure. Thus, the determination of both the scope of Alumax's control over the attendance policy and any consequences flowing from a violation of that policy are dependent upon an analysis of the Agreement. *Olguin*, 740 F.2d at 1474 (rejecting employee's contention that a personnel policy manual constituted a separate contract of employment and concluding that "any independent agreement ... [can] be effective only as part of the collective bargaining agreement"). Therefore, we conclude that Harris's state law claims are preempted. They are thus converted by operation of law into a section 301 federal cause of action to enforce rights covered by the collective bargaining agreement.

### III

Having decided that Harris's state law claims must be construed as a section 301 action against Alumax, we next consider whether it is time-barred. A ruling on the appropriate statute of limitations is a question of law which we review de novo. *Sheet Metal Workers International Association, Local Union 150 v. Air Systems Engineering, Inc.*, 831 F.2d 1509, 1511 (9th Cir.1987).

In *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court held that the six-month statute of limitations period contained in section 10(b) of the National Labor Relations Act applies to "hybrid" suits where

the employee alleges that the employer breached the collective bargaining agreement and that the union breached its duty of fair representation. *Id.* at 169–70; *Kalombo v. Hughes Market, Inc.*, 886 F.2d 258, 259 (9th Cir.1989); *Stallcop*, 820 F.2d at 1049. Harris's suit is clearly a hybrid section 301 and fair representation claim. Therefore, the six-month statute of limitations applies.

■ Harris's claims accrued no later than July 13, 1983, the date on which he was informed by a Union representative that the Union would not pursue a grievance on his behalf. *Stallcop*, 820 F.2d at 1049; *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir.1986) (the statute of limitations "begins to run when an employee knows or should know of the alleged breach of duty of fair representation"). Harris, however, did not file his complaint until May 8, 1984, more than nine months later. Thus, his complaint is time-barred.

## IV

■ Harris argues that the six-month statute of limitations was tolled during the pendency of his worker's compensation claim. This issue is one of first impression among the circuits. However, we are not without guidance in the resolution of this question. In *Conley v. International Brotherhood of Electrical Workers, Local 639*, 810 F.2d 913 (9th Cir.1987) (*Conley*), we faced a similar issue. There, we rejected an employee's contention that the time to file his section 301 claim was tolled by the filing of a charge with the National Labor Relations Board (NLRB). *Id.* at 915. We stated that "[e]quitable tolling is most appropriate when the plaintiff is *required* to avail himself of an alternate course of action as a precondition to filing suit." *Id.* (emphasis added). We concluded that to allow tolling when the filing of an NLRB claim was merely optional would "frustrate the national policy of prompt·resolution of labor disputes." *Id.* at 916; *see also Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 671 (9th Cir.1988) (following *Conley*); *accord Arriaga–Zayas v. International Ladies' Garment Workers' Union—Puerto Rico Council*, 835 F.2d 11, 14 (1st Cir. 1987), *cert. denied*, 486 U.S. 1033, 108 S.Ct. 2016, 100 L.Ed.2d 604 (1988).

*Conley*'s reasoning is applicable to this case. Harris's worker's compensation claim is an optional claim for injuries sustained in the accident. It clearly was not a "precondition to filing suit." *Conley*, 810 F.2d at 915. Once Harris realized that the Union would not pursue his grievance, nothing prevented him from filing this action while still pursuing his worker's compensation claim. Moreover, as in *Conley*, allowing Harris's worker's compensation claim to toll the time for filing his hybrid section 301/duty of fair representation suit would "frustrate the national policy of prompt resolution of labor disputes." *Id.* at 916.

Our reliance on *Conley* is further supported by the teachings of the Supreme Court regarding the tolling of a statute of limitations by the filing of an optional claim. The Court has made it clear that it is reluctant to invoke tolling where a plaintiff is tardy in pursuing a parallel avenue of relief. *See International Union of Electrical, Radio and Machine Workers, Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 236–40, 97 S.Ct. 441, 446–49, 50 L.Ed.2d 427 (1976) (no tolling of Title VII claim where plaintiff initially sought relief under the collectively-bargained grievance procedure and then later sought relief under Title VII); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 460–63, 95 S.Ct. 1716, 1720–22, 44 L.Ed.2d 295 (1975) (timely filing of Title VII claim does not toll the running of the statute of limitations applicable to an action, based on the same facts, brought under 42 U.S.C. § 1981). We therefore hold that filing a worker's compensation claim does not toll the six-month statute of limitations period for hybrid section 301/duty of fair representation suits. We hold that the district court properly dismissed Harris's suit as time-barred.

Because we conclude that Harris's suit was time-barred, we do not address whether Harris sufficiently exhausted his remedies under the Agreement.

## V

Alumax contends that Harris's appeal is frivolous and that it is entitled to attorneys' fees and double costs on appeal. We have discretion to assess such damages pursuant to 28 U.S.C. § 1912 and Fed.R. App.P. 38. "An appeal is considered frivolous in this circuit when the result is obvious, ... or the appellant's arguments of error are wholly without merit." *Taylor v. Sentry Life Insurance Co.*, 729 F.2d 652, 656 (9th Cir.1984), *citing Jaeger v. Canadian Bank of Commerce*, 327 F.2d 743, 746 (9th Cir.1964), and *Libby, McNeill, and Libby v. City National Bank*, 592 F.2d 504, 514 (9th Cir.1978). Harris's argument that filing a worker's compensation claim tolls the statute of limitations is one of first impression. Our conclusion that *Conley* is controlling is not so obvious as to justify the imposition of sanctions. Therefore, we deny Alumax's request.

AFFIRMED.