896 F.Supp. 1492 (1995)
Gary L. HILL, et al., Plaintiffs,
v.
RALPHS GROCERY COMPANY, et al., Defendants.
No. CV 94-806-AAH.
United States District Court, C.D. California.
August 7, 1995.
*1493 *1494 Roxanne A. Davis, Frank Hakim, Law Offices of Kourosh Sadighpour, Los Angeles, CA, for plaintiffs.
Mark W. Robbins, Robert F. Millman, Littler, Mendelson, Fastiff, Tichy & Mathiason, Los Angeles, CA, for defendants Ralphs Grocery Co., Leon Sims and James Dochert.
Hirsch Adell, Laurence S. Zakson, Reich, Adell, Crost & Cvitan, Los Angeles, CA, for defendants Bakery, Confectionery and Tobacco Workers Intern. Union, Local No. 37, AFL-CIO, CLC.
DECISION, FINDINGS OF FACT AND CONCLUSIONS OF LAW RE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
HAUK, District Judge.

INTRODUCTION
Plaintiffs, numbering more than 250, are former employees of Ralphs Grocery Co. ("Ralphs") who were either laid off in early 1993 or terminated in August 1993 due to the permanent discontinuation of Ralphs' central baking operations and the shut down and demolition of the bakery plant in August 1993. Plaintiffs were also members of the Bakery, Confectionery and Tobacco Workers International Union and Local No. 37 ("Local 37"), the union that represented Plaintiffs in negotiations with Ralphs. A series of collective bargaining agreements governed the employment relationship between Ralphs and Plaintiffs. The most recent collective bargaining agreement was retched on October 23, 1992, and was ratified by Local 37's membership on the following day, October 24, 1992 ("Agreement"). On February 4, 1994, Plaintiffs sued Ralphs, its managers Leon Sims and James Docherty (collectively "Ralphs"), and Local 37 in the dispute arising out of the Agreement, the January 1993 layoff, and the August 1993 plant closing.
In the First Amended Complaint ("Complaint"), Plaintiffs allege nine causes of action against both defendants unless noted: (1) Breach of Contract under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 [against Ralphs]; (2) Breach of Duty of Fair Representation [against Local 37]; (3) Breach of Fiduciary Duty [against Local 37]; (4) Breach of the Covenant of Good Faith and Fair Dealing; (5) Misrepresentation/Fraud; (6) Conspiracy; (7) Violation of the WARN Act [against Ralphs]; (8) Failure to Pay Wages [against Ralphs]; and (9) Intentional Infliction of Emotional Distress. Ralphs now moves for Partial Summary Judgment or Summary Adjudication of Issues on the First, Fourth, Fifth, Sixth, Eighth, and the Ninth Causes of Action. Local 37 also moves the Court for Summary Judgment on the Second, Third, Fourth, Fifth, Sixth and Ninth Causes of Action.
This matter came on regularly for hearing before this Court on July 17, 1995, and upon conclusion of this hearing this matter was taken under submission for decision. Now, after carefully considering all the legal points and authorities, arguments and evidence submitted in this matter, the Court hereby makes and enters its findings of fact and conclusions of law.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

I. SUMMARY JUDGMENT STANDARD
Pursuant to Federal Rule of Civil Procedure 56, the party moving for Summary *1495 Judgment must "show that there is no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment is not a disfavored procedural shortcut, but an integral part of the Federal Rules designed to secure a fair and just determination. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a genuine issue of material fact has been raised, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Donahue v. Windsor Locks Bd. of Fire Com'rs, 834 F.2d 54, 57 (2nd Cir.1987), citing, U.S. v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962) (per curiam). However, in order to defeat a Motion for Summary Judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier-of-fact to find for the non-moving party, there is no `genuine issue for trial.'" Matsushita Electric Ind. Co. v. Zenith Radio, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "To survive a Motion for summary Judgment, Plaintiff must produce sufficient evidence to establish the existence of every essential element of their case on which they will bear the burden of proof at trial." River City Markets, Inc. et al. v. Fleming Foods West, Inc. et al., 960 F.2d 1458 (9th Cir.1992).

II. RALPHS' MOTION FOR SUMMARY JUDGMENT

A. First Cause of Action for Breach of Contract-Section 301 of LMRA.

Plaintiffs allege that Ralphs breached the Agreement by permanently discontinuing its central baking operations, shutting down the bakery facility and terminating Plaintiffs' employment before the expiration of the Agreement's three-year term, (Complaint ¶¶ 282-283, 284, 307, 309), and by allegedly transferring bargaining unit work to an alter ego or successor company. (Complaint ¶¶ 282-283, 284, 307, 309).

1. No Actual Breach of the Agreement.
Ralphs did not breach the Agreement by shutting down the bakery plant because the Agreement does not prohibit Ralphs from closing it down. Rather, the Agreement specifically contemplates a plant shut down before its expiration. The Severance Pay provision in Section XV provides for severance pay to qualified employees who are "displaced and terminated from employment due to the closing of the entire Plant...." The Agreement provides a specific remedy in case of a plant shut down. If the Agreement contemplates the possibility of plant closure and sets forth contingency provisions, a plant closure cannot possibly constitute a breach the contract. Ralphs had the employer right, absent a specific provision to the contrary, to shut down its plant without financial liability to its employees aside from severance pay. The Agreement did not require Ralphs to continue unprofitable bakery operations until the expiration of the Agreement.
Plaintiffs point to three provisions of the Agreement that Ralphs allegedly breached by closing its bakery plant: 1. The Term of Agreement clause in Section XXXV; 2. the Successor clause in Section XXIII; and the Binding clause in Section XXI.
The Term of Agreement[1] clause specifically does not create an employer-employee relationship but simply means that as long as an employer-employee relationship exists, the rights and obligations of the parties are governed by the contract. See Fraser v. Magic Chef-Food Giant Markets, Inc., 324 F.2d 853, 856 (6th Cir.1963). The Fraser Court relied on Case v. N.L.R.B., 321 U.S. 332, 334-35, 64 S.Ct. 576, 578-79, 88 L.Ed. 762 (1944), where the Supreme Court stated that collective bargaining between an employer and a union results in an agreement in which the terms will govern hiring, work and *1496 pay; the result is not a contract of employment; no one has a job by reason of it; and no obligation to any individual is ordinarily created by it. Thus, the Fraser court held that an employer's decision to discontinue a plant did not violate the collective bargaining agreement. The Ninth Circuit in this vein recently cited Fraser with approval and held, "it is well established that a collective bargaining agreement cannot bind an employer to continue in business." Wien Air Alaska v. Bachner, 865 F.2d 1106, 1112 (9th Cir.1989). Thus, a plant closure does not violate the Terms of Agreement clause.
Similarly, there is no evidence of a breach of the Successor clause. This clause provides,
This Agreement shall be binding upon the successor and assigns of the parties hereto, and no provisions, terms or obligations herein contained shall be affected, modified, altered or changed in any respect whatsoever by the consolidation, merger, sale, transfer, or assignment of either party hereto, or affected, modified, altered, or changed in any respect whatsoever by any change of any kind in the legal status, ownership or management of either party hereto, or by any change, geographical or otherwise in the location of the place of business of either party.
(emphasis added).
A successor employer is a firm that hires most of its employees from a predecessor employer's workforce and conducts essentially the same business. N.L.R.B. v. Jeffries Lithograph Co., 752 F.2d 459, 463 (9th Cir.1985). The defendants have provided evidence that Ralphs permanently closed its bakery plant and did not sell, transfer or assign the bakery to a third party. (Rosenow Decl. at ¶ 7). Although Plaintiffs allege that an entity named Fornaca Bakery is an assignee of Ralph's Bakery, they have failed to provide any evidence that Ralphs did in fact sell, transfer or assign its rights to Fornaca or that Fornaca is carrying on essentially the same business with most of Ralphs former employees. In a summary judgment motion, the non-movant must submit evidence to establish a genuine issue of material fact and may not rely upon mere allegations. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1985). Plaintiffs provide neither any declaration nor any documentary evidence to show a successorship. Consequently, Plaintiffs have failed to show a genuine issue of material fact.
The Binding[2] clause is also innocuous because it does not prohibit Ralphs from closing down its plant. Plaintiffs fail to show any specific clause in the Agreement that Ralphs violated. Their allegation that Ralphs knew in 1992 that it was going to close down the bakery plant does not create a genuine issue of material fact. Because the Agreement does not prohibit Ralphs from closing the bakery plant, this allegation is irrelevant even if true. Plaintiffs' attempt to distinguish Fraser is unpersuasive, and they fail to address adequately why the Severance clause does not indicate that the Agreement contemplated a possible plant closure.

2. No Standing
Ralphs is also entitled to summary judgment on the First Cause of Action because the Plaintiffs lack standing to sue for breach of contract under the Term of Agreement clause, the Binding clause, and the Successor clause. The general rule is that only unions can litigate violations of labor agreements, and it is an exception for individuals to have standing under Section 301 of the L.M.R.A. Gutierrez v. United Foods, Inc., 11 F.3d 556 (5th Cir.1994), cert. denied, ___ U.S. ___, 114 S.Ct. 2164, 128 L.Ed.2d 887 (1994). Individuals have standing to sue their employer under Section 301 *1497 only when they assert "uniquely personal rights of employees such as wages, hours, overtime pay, and wrongful discharge." Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976). In Gutierrez, the plaintiffs attempted to sue their former employer for breach of the successors and assigns clause in a collective bargaining agreement after their former employer sold the business to a new owner that did not re-hire the plaintiffs and after the union refused to pursue the action. Gutierrez, 11 F.3d at 557-59. The Fifth Circuit held that the alleged acts by the employer in this case implicated collective rights of the entire employee unit and not uniquely personal rights and affirmed the district court's dismissal of the claim. Id. at 560-63. The court reasoned that these asserted rights were collective because the rights ran to all employees in equal measure. Id.
Similarly, in Brown v. Sterling Aluminum Products Corp., 365 F.2d 651 (8th Cir.1966), cert. denied, 386 U.S. 957, 87 S.Ct. 1023, 18 L.Ed.2d 105 (1967), individual union members sued their former employer for an alleged breach of a collective bargaining agreement arising out of the employer's plant closure, relocation of operations and termination of employment of the unionized employees. The Eighth Circuit held that the individual employees lacked standing because these alleged breaches were violations of the collective rights of the entire unit and not personal rights of the individual union members. Id. at 657.
This case falls well within the parameters of Brown and Gutierrez as Plaintiffs here allege only violations of collective rights. Plaintiffs assert that Ralphs breached the Agreement's Successor Clause, Binding Clause and Term of Agreement Clause by closing its central baking operations in Glendale, terminating the production and maintenance unit and allegedly transferring unit work to an alter ego or successor company. The rights allegedly arising out of these clauses "ran to all employees in equal measure" because they affect the employees as a collective unit. The courts in Brown and Gutierrez specifically held that these types of allegations implicated collective rights of the union rather than individual rights. Accordingly, Plaintiffs here lack standing to sue Ralphs for these alleged violations.
Plaintiffs admit that they can sue only for violations of individual rights, not collective rights. However, they only make a conclusory assertion that they have alleged individual rights and fail to provide proof. Plaintiffs' reliance on Smith v. Evening News Ass., 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), for the proposition that they have standing is misplaced. In Smith, the plaintiff sued under a contract provision prohibiting discrimination against employees because of their union membership. Id. The Court in Smith specifically noted that it did not decide whether an employee has standing to sue an employer under a collective bargaining agreement. Id. at 201 n. 9, 83 S.Ct. at 270 n. 9. Thus, Smith is inapposite and does not control.

3. No Severance Pay Issue  Moot
Plaintiffs also apparently allege breach of contract for failure to award severance pay under the Severance clause in Section XV of the Agreement. Any claim against Ralphs under the Severance clause, however, is moot because this matter has already been resolved by neutral arbitration. Local 37 grieved Ralphs denial of severance pay to employees laid off due to closing or partial closing of the bakery and pursued arbitration under the Grievance Procedure set forth in Section XIX of the Agreement. Arbitrator Edgar A. Jones resolved these issues largely in Plaintiffs' favor and has preserved jurisdiction over this matter. Arbitrator Jones has set forth two opinions in this matter, one on November 17, 1994, (Zakson Decl. at Ex. 16), and one on May 17, 1995, (Robbins Decl. at Ex. G). Plaintiffs may pursue their dispute regarding Ralphs' failure to honor the Severance clause only on appeal from the arbitrator's decisions.

B. Federal Preemption of State Law Claims in the Fourth, Fifth, Sixth, Eighth and Ninth Causes of Action.

The State law claims Plaintiffs allege against Ralphs are preempted by Federal labor law. When State law claims are *1498 preempted, they must either be treated as Section 301 claims or dismissed as preempted by Federal law. Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220, 105 S.Ct. 1904, 1915, 85 L.Ed.2d 206 (1985). These claims, therefore, should be dismissed as preempted by Federal law.
Federal policy is that substantive principles of Federal law should apply in the Section 301 area, so a uniform doctrine of Federal labor law will prevail over inconsistent local rules. Teamsters v. Lucas Flour Co., 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962). The preemptive force of Section 301 completely displaces any State cause of action for violation of a collective bargaining agreement. Stallcop v. Kaiser Foundation Hospitals, 820 F.2d 1044 (9th Cir.1987), cert. denied, 484 U.S. 986, 108 S.Ct. 504, 98 L.Ed.2d 502 (1987). Thus, if the resolution of a State-law claim depends upon the meaning of a collective bargaining agreement, the application of State law is pre-empted and Federal labor-law principles must apply. Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). State law claims are preempted if they require the interpretation of a collective bargaining agreement. Id. State law claims for Breach of the Implied Covenant of Good Faith and Fair Dealing are always pre-empted because the right asserted is rooted in the labor contract and can only be determined by interpreting the rights and obligations established in the contract. Harris v. Alumax Mill Products, Inc., 897 F.2d 400 (9th Cir. 1990), cert. denied, 498 U.S. 835, 111 S.Ct. 102, 112 L.Ed.2d 73 (1990). Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 218-219, 105 S.Ct. 1904, 1914-15, 85 L.Ed.2d 206 (1985). Thus, the Fourth Cause of Action alleging that Defendants by terminating Plaintiffs and making alleged misrepresentations breached the implied covenant of good faith and fair dealings is preempted. (Complaint ¶¶ 308-9).
Moreover, State tort claims that arise out of the same acts and conduct which form the basis of a Section 301 or breach of duty claims are also preempted. Carter v. Smith Food King, 765 F.2d 916, 920 (9th Cir.1985). Plaintiffs Fifth Cause of Action for Fraud and Sixth Cause of Action for Conspiracy are thus pre-empted under Carter because they are State tort claims that arise out of the same conduct that is the basis for the Section 301 Breach of Contract claim and because their resolution requires interpreting the Agreement. Plaintiffs allege: That defendants entered into the Agreement fraudulently and falsely assured Plaintiffs that Ralphs was able to and would fulfill its obligations under the Agreement (Complaint ¶ 264, 313); Ralphs removed Plaintiffs from their "full-time" positions and recharacterized them as "part-time" although they purportedly continued to work full-time hours to avoid paying severance under Section XV (Complaint ¶ 267); the defendants falsely assured Plaintiffs who were eligible for Golden 80s or 90s early retirement that they were ineligible for severance pay and misled them to take early retirement (Complaint ¶¶ 269-71, 313-14, 336, 342); and Ralphs concealed its alleged involvement in an alter ego or successor bakery to obscure its purported breach of the Successorship clause (Complaint ¶¶ 283, 313). Plaintiffs also allege that Ralphs and Local 37 conspired to defraud Plaintiffs in negotiating, entering into and administering the Agreement. (Complaint ¶¶ 264, 313, 323-25, 342). Because the Fifth and Sixth Causes of Action all depend on interpreting the Agreement and because they arise out of the same acts that are the basis for the Section 301 claim, they are preempted.
Any State law claim for payment of wages on the Eighth Cause of Action is also preempted because it would require interpreting of the Severance clause.
The Ninth Cause of Action for Intentional Infliction of Emotional Distress is preempted if it arises out of the same conduct which forms the basis for breach of contract. Harris, 897 F.2d at 403. If an intentional infliction of emotional distress claim arose out of the discharge of employment, it is preempted. Stallcop, 820 F.2d at 1049. The complaint only alleges conduct arising out of the plant closure and consequential discharge of employment, which together *1499 form the basis for the breach of contract claim. Thus, under Harris and Stallcop, the Ninth Cause of action for Intentional Infliction of Emotional Distress it is also preempted.

III. LOCAL 37'S MOTION FOR SUMMARY JUDGMENT

A. The Second Cause of Action for Breach of the Duty of Fair Representation.

Plaintiffs' claims that Ralphs breached the Agreement and that Local 37 violated its Duty of Fair Representation by failing to pursue a grievance against Ralphs is a "hybrid" Section 301-Fair Representation claim. DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164-65, 103 S.Ct. 2281, 2290-91, 76 L.Ed.2d 476 (1983); Conley v. Int'l Bhd. of Elec. Workers, Local 639, 810 F.2d 913, 915 (9th Cir.1987). A "hybrid" claim is subject to a six-month limitations period beginning when the employee knows or should know of the employer's breach of contract and the unions' breach of the Duty of Fair Representation. Allen v. United Food & Commercial Workers Int'l Union, 43 F.3d 424, 426 (9th Cir.1994). The Plaintiffs filed their complaint on February 4, 1994, and their claims are barred if they accrued before August 4, 1993.
Plaintiffs breach of duty claim against Local 37 is based on the following allegations and issues: (1) Local 37 depleted its strike fund in connection with matters other than labor disputes involving Ralphs (Complaint ¶¶ 261, 277, 296); (2) Local 37 negotiated a collective-bargaining agreement that was inadequate to protect the employees' interest (Complaint ¶¶ 264, 342); (3) Local 37 allowed Ralphs to close the Glendale bakery before the three-year term of the collective-bargaining agreement expired (Complaint ¶¶ 262, 263, 264, 279, 296); (4) Local 37 chose not to challenge the plant closing as an effort by Ralphs to circumvent contractual obligations through a transfer of work to an alter ego or successor employer (Complaint ¶ 265, 283, 313); (5) Local 37 told employees eligible for early retirement that they should retire because they would not receive severance pay if they worked through the closing date (Complaint 269, 270, 272, 313, 342); (6) Local 37 declined to hold a membership meeting between April 13 and August 3, 1993 (Complaint ¶¶ 275, 297); and (7) Local 37 told plaintiffs that the bakery would remain open indefinitely.
Plaintiffs knew of the depletion of the strike funds by no later than October 24, 1992. On October 3, 1992, the amount of money in Local 37's strike fund was discussed, and a report was made by an independent auditor commenting on the serious depletion of the strike funds. (Perry Decl. at 9; Bryan Decl. Ex. 4). The depletion of the strike funds was a topic at the October 24, 1992 meeting. (Bryan Decl. Ex. 3; Zakson Decl. Ex. 19 at 83; Benoit Decl.). Thus, the claim for depletion of the strike funds accrued on October 24, 1992, and is, therefore, barred. The claim for an allegedly inadequate collective bargaining agreement accrued on October 24, 1992, when it was read to the Plaintiffs at the ratification meeting. (Polanco Decl. at ¶ 4 at 2-3 & Ex. 5). The Agreement was circulated in March 1993. (Bryan Decl. at ¶ 3). Thus, this claim is also barred. Plaintiffs did not attempt to exhaust union remedies with regard to these claims, so the six-month limitations period on these claims was not tolled.
Regarding any claim arising out of the plant closure and Local 37's decision not to grieve the decision, Plaintiffs should have known that Local 37 was not legally opposing the closure by July 31, 1993, or on August 3, 1993, at the latest. Thus, these claims accrued before August 4, 1993, and would appear at first glance to be barred because the original complaint was not filed until February 4, 1994. However, Plaintiffs have established that there is a genuine issue of material fact as to whether Plaintiffs were exhausting internal union remedies, and consequentially the limitations period was tolled.
At the April 13, 1993 membership meeting, Local 37 then-president Bill Walton told the members that Ralphs decided to close the bakery plant, that the target date was in mid-June 1993, and that a formal Worker *1500 Adjustment and Retraining Notification[3] was expected. (Polanco Decl. at ¶ 9; Bryan Decl. Ex. 3).
Gary Hill wrote a letter dated July 31, 1993 on behalf of over one hundred Ralphs employees to International Union President Frank Hurt to protest the closing. (Hurt Decl. at ¶ 6). The letter stated that the employees were dissatisfied by Local 37's response to the closure, that the International should intervene, and that if the union did not act the employees would file a lawsuit. Hurt responded to this letter on September 20, 1993, stating that the union would not pursue the issue.
In an August 3, 1993 meeting, Walton again told the employees that the bakery would be closed. At this meeting, one of the plaintiffs confronted Walton about Local 37's failure to take action regarding the plant closure and Walton replied, "Go ahead and sue me." (Hill Decl. ¶ 16). Moreover, Walton announced that employees eligible for early retirement were also eligible for severance pay and that previous representations to the contrary were untrue. (Benoit Decl. ¶¶ 22-23; Davignon Decl. ¶ 8).
Plaintiffs do not contest these facts. In fact, a number of the Plaintiffs' declarations indicate that some former employees asked if Local 37 was filing a grievance about the plant closure or if it was going to do so, and Local 37 Business Agent Daniel Polanco either ignored these overtures or "put the employees off." (Ornales Decl. ¶ 9; Benoit Decl. ¶ 26).
These facts indicate that the Plaintiffs knew or should have known by August 3, 1993, at the latest, that Local 37 would not pursue a grievance. The Hill letter indicates that the employees did not expect the union to act. When Walton told one of the employees, "sue me," it was clear that there was a potential breach of duty claim against Local 37. From April 13 to August 3, 1993, Plaintiffs knew that Ralphs was closing the Bakery and Local 37 was apparently not taking any action to stop it. Within that time, Plaintiffs should have known that the union did not intend to pursue the claim. The Seventh Circuit has upheld a district court holding that sending a letter to a union demanding that the union take action to rectify a problem is sufficient to trigger the limitations period. Pantoja v. Holland Motor Express, Inc., 965 F.2d 323 (7th Cir.1992). "Prolonged inaction is sufficient to give a diligent plaintiff notice that the union has breached its duty of fair representation." Id. at 327. There was prolonged inaction by Local 37 sufficient to put a diligent plaintiff on notice that there was a breach of duty claim between April 13 and August 3, 1992.
Plaintiffs argue that they did not have sufficient knowledge that Local 37 would not pursue their grievance until August 4, 1993. They contend that the claim accrued on September 20, 1993, when Hurt responded to Hill's July 31 letter by stating that the union would not grieve the plant closing. This argument is disingenuous and unreasonable given the uncontroverted facts stated above. The Plaintiffs should have known by August 3, 1993 that Local 37 would not pursue this claim. It is not necessary for a union to give final notice that it will not pursue a claim for the hybrid cause of action to accrue. Pantoja, 965 F.2d at 327.
However, there is a genuine issue of material fact as to whether Plaintiffs were exhausting internal union procedures before filing a lawsuit by writing the July 31 letter to Union President Hurt complaining about Local 37's inaction. The limitations period would be tolled if Plaintiffs were exhausting internal union remedies. Therefore, the Court is unwilling to grant summary judgment on the Second Cause of Action at this time with regard to claims arising out of the plant closure. However, Local 37's motion for summary judgment is granted with regard to claims based on an alleged depletion of strike funds and an inadequate collective bargaining agreement because this claim accrued in 1992.
The six-month limitation period can be tolled "by the pursuit of internal union remedies, even where those remedies are ultimately determined to have been futile." Frandsen v. Bhd. of Ry., Airline & S.S. *1501 Clerks, 782 F.2d 674, 681 (7th Cir.1986). The court elaborated this ruling by envisaging the following scheme: An employee seeking to vindicate his right to fair representation has six months from the date of his injury to file suit in federal court; at the same time, however, he must pursue internal union procedures that possibly may provide him with a remedy; thus, during the pendency of those union procedures, the six-month statute of limitations is tolled, to commence running only when the union procedures are exhausted. Id.[4]
Exactly what constitutes "exhausting internal union remedies" is unclear. The Seventh Circuit held that tolling occurs while a plaintiff pursues specific internal union remedies through designated channels. Pantoja, 965 F.2d at 329.[5] The Second Circuit held that informal correspondence does not toll a limitations period because otherwise a plaintiff could cause indefinitely delay. See e.g., Legutko v. Local 816, Intern. Broth. of Teamsters, 853 F.2d 1046 (2nd Cir.1988). The court set forth the rule that a plaintiff must follow the established procedures set forth in the union's guidelines to claim that exhausting internal remedies tolls the limitations period. Id. at 1054-55.
Plaintiffs show that they asked Polanco and Walton to file grievances to contest the plant closure. Plaintiffs argue that the common practice for filing a grievance was to orally complain to the Business Agent, who would then file a grievance or otherwise resolve the issue. Thus, Plaintiffs believed that they were following standard union remedies by complaining to Polenco. When Plaintiffs' attempts to get Local 37 to act proved unsuccessful, Plaintiffs took what they believed to be the next proper course of action by contacting the International President. The International Union's Constitution provides that if the party against whom a complaint is being made is a local union, "the charges shall be filed with the International President." (Perry Decl., Exh. 1 at 52). On May 11, 1992, then International President DeConcini wrote a letter to one Virginia Reese explaining that "if a [union] member has a complaint against their local union that the union has failed to resolve, the member must write a letter to me explaining their situation and asking for our assistance." (Davis Decl., Ex 6 at 15).
Plaintiffs allege that based on this letter and the formal language of the International Constitution, Plaintiffs believed that they were complying with the policies, procedures and the union's own constitutional mandates in an effort to exhaust all internal union remedies before bringing a lawsuit, so Gary Hill's July 31, 1993 letter to International president Frank Hurt did actually grieve the failure and refusal of Local 37 to address their concerns regarding the plant closure. Hill's letter, signed by over 100 Plaintiffs, complained about Walton's inadequate representation of Local 37 regarding the plant closure.
Local 37 contends that Hill's letter of July 31, 1993, was not an attempt to exhaust union remedies on two grounds. First, Local 37 argues that the May 14, 1992 DeConcini letter is irrelevant to this controversy regarding the plant closure because it was written more *1502 than a year before the Hill letter. Virginia Reese, to whom the DeConcini letter was written, is neither a Plaintiff herein nor a Ralphs' employee. Local 37 argues that Hill could not have been relying on the DeConcini letter in an attempt to exhaust union remedies because there is no nexus between that letter and this case and because there is no evidence that Hill possessed that letter. Second, Plaintiff did not in fact follow established union procedures. The union's constitution requires that a member in good standing must specify both the particular provisions of the constitution involved and the particular conduct constituting the alleged violation in sufficient detail to afford the charged party a fair opportunity to defend against the charges. But Plaintiffs did not specifically follow the constitutional procedures because they failed to cite to the constitutional provision that Walton allegedly violated or identify the conduct that constituted such a violation. Moreover, the complaint should also have been filed with the financial secretary-treasurer of Local 37.
In a summary judgment motion, the Court must view the evidence presented in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Taking the evidence and all the reasonable inferences in favor of the Plaintiffs, the Court finds a genuine issue of material fact as to whether Plaintiffs' were attempting to exhaust internal union remedies by writing the July 31 letter. A reasonable trier of fact could find that Plaintiffs were aware of the DeConcini letter[6] and that Plaintiffs, in reliance on the representations made by the union's then-president DeConcini, attempted to follow the established procedures that they were told to follow. A reasonable trier of fact can also find that the Hill letter is not an informal plea from a rogue employee, but a serious, calculated, collective effort to follow union procedures in good faith because more than one hundred employees were signatories. Moreover, although Plaintiffs did not cite to the constitution in the July 31 letter to the International President, they did provide sufficient detail to give Walton an opportunity to defend because Local 37 officers were well aware of the context. Since a trier of fact might reasonably find that Plaintiffs did attempt to exhaust internal union remedies regarding their complaint against Local 37 for not contesting the plant closure, the Court finds a genuine issue of material fact precluding granting Partial Summary Judgment on the Second Cause of Action on issues (3), (4), (5), (6) and (7), all of which arise out of Local 37's allegedly inadequate response to the plant closure.

B. Preemption of State Claims in the Third, Fourth, Fifth, Sixth and Ninth Causes of Action.

All the State law claims asserted against Local 37 are preempted because they arise out of the same conduct that constitutes the breach of the duty of fair representation claim and because they require an interpretation of the Agreement. Thus, the Third, Fourth, Fifth, Sixth and Ninth Causes of Action should be dismissed.

C. Local 37's Alternative Motion for Dismissal in Abatement of all Claims Against Local 37.

Local 37 also moves to dismiss in abatement all of Plaintiffs' claims for failure to exhaust Plaintiffs' contractual remedies  insofar as these claims are predicated on a breach of the Agreement  and the internal union remedies.
An employee must first exhaust or attempt to exhaust the grievance and arbitration remedies provided in a collective bargaining agreement before filing a suit based on that contract. Republic Steel Corp. v. Maddox, 379 U.S. 650, 652-53, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); Truex v. Garrett Freightlines, Inc., 784 F.2d 1347, 1353 (9th Cir.1985). When a collective bargaining agreement provides grievance and arbitration procedures, those procedures must first be exhausted and the Court must require "resort to the private settlement mechanisms *1503 without dealing with the merits of the dispute." Paperworkers v. Misco, Inc., 484 U.S. 29, 37, 98 L.Ed.2d 286 (1987).
In this case, the Agreement provides in Section XIX, "Should any controversy, dispute, or disagreement arise during the term of this Agreement, out of the interpretation or application of the Agreement ... the differences shall be adjusted in accordance with the procedure set forth below." Step 1 in the process requires the employee or the shop steward to discuss the matter with the immediate supervisor. If that fails, Step 2 requires the union's Business Agent to try to settle the controversy amicably with the Plant Manager. Step 3 provides that a complaint should be submitted to a Board of Adjustment with two representatives of the Board chosen by the union and two by the employer. If Step 3 fails to resolve the dispute, Step 4 provides for either the Union or the Employer to request neutral arbitration.
Although Plaintiffs are required to exhaust the grievance procedures in the collective bargaining agreement before bringing a suit premised on a breach of the collective bargaining agreement, they are excused from this exhaustion requirement because pursuing it would have been futile.
In a suit arising out of a collective bargaining agreement, employees are excused from exhausting the contractual remedies if the union has the sole discretion to invoke the higher stages of the grievance procedure and if the employee has been allegedly prevented from exhausting the contract remedies by the union's wrongful refusal to process the grievance. Vaca v. Sipes, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967). The Supreme Court stated, "[An employee] may bring an action against an employer in the face of a defense of a failure to exhaust contractual remedies, provided the employee can prove that the union as the bargaining agent breached its duty of fair representation in handling the employee's grievance." Id. at 186, 87 S.Ct. at 914.
The Supreme Court has also held that, in a suit against a union for breach of the duty of fair representation, plaintiffs are excused from exhausting contract remedies when they allege that it would be futile to attempt to do so. Glover v. St. Louis-S.F. R. Co., 393 U.S. 324, 331, 89 S.Ct. 548, 552, 21 L.Ed.2d 519 (1969). The Court in the following language stated, "[T]he complaint alleges ... that a formal effort to pursue contractual or administrative remedies would be absolutely futile. Under these circumstances, the attempts to exhaust contractual remedies, required under Maddox, is easily satisfied by petitioners' repeated complaints to company and union officials...." Id. at 331, 89 S.Ct. at 552 (emphasis in original). See also Ritza v. Int'l. Longshoremen's & Warehousemen's Union, 837 F.2d 365 (9th Cir.1988).
The dilemma Plaintiffs faced here is exactly the problem, the Catch-22, that the Supreme Court discussed in Vaca. The grievance procedure in the Agreement apparently confers upon the union the sole discretion to invoke the higher stages of the grievance procedure as was the case in Vaca. Local 37's cooperation is necessary for these higher stages of the contract grievance procedure: Step 2 requires the Union's Business Agent to settle the dispute with Ralphs; Step 3 allows a Board of Adjustment controlled by the Union and Ralphs to decide the dispute; Step 4 provides for either the Union or Ralphs to request arbitration  and makes no provision for employees to seek arbitration directly.
Plaintiffs here have made complaints to Local 37 about the plant closure, and Local 37 chose not to pursue this grievance (viz. Walton's response to a complaint, "sue me" on August 3, 1993); any doubt about this was resolved by Hurt's letter of September 20. Local 37 chose only to pursue grievances regarding the severance pay issue. Plaintiffs' duty of fair representation claim against Local 37 is based on the union's refusal to pursue a grievance regarding the plant closure. It would seem disingenuous to require the Plaintiffs to exhaust procedures that are largely within the union's control when their claim is against the union itself. It defies logic to dismiss Plaintiffs' claims because Local 37 did not take this grievance to arbitration when Plaintiffs' litigation against Local *1504 37 is based on Local 37's failure to pursue the grievance through arbitration. Requiring the plaintiffs to exhaust these procedures would be futile under Vaca.
Moreover, the evidence indicates that a number of the plaintiffs complained about the plant closure to Danny Polenco, the Local 37 Business Agent, and prior to this present litigation conflict, when oral complaints were made to the Business Agent, grievances were filed. (See Castilla Decl.; Oranales Decl.; Benoit Decl.). As in Glover, supra, Plaintiffs here allege that exhausting contract remedies would be futile inasmuch as repeated complaints to union officials have been ignored. As such, the requirement to exhaust contract remedies is excused.
Plaintiffs should also be excused from exhausting internal union remedies. The Supreme Court has held that where an internal union appeals procedure cannot result in the reactivation of the employees grievance or an award of the complete relief sought in a Section 301 claim, exhaustion will not be required with regard to the suit against the employer and the union. Clayton v. Auto. Workers, 451 U.S. 679, 685, 101 S.Ct. 2088, 2093, 68 L.Ed.2d 538 (1981). If any of the following factors are found, the Court may excuse the failure to exhaust internal union remedies: (1) Hostile union officials who preclude a fair hearing; (2) internal union appeals procedures that are inadequate to reactivate the employees' grievance or award full relief sought under Section 301; and (3) exhaustion of internal union remedies would unreasonably delay the employees' opportunity to obtain a judicial hearing on the merits of the claim. Id. at 689, 101 S.Ct. at 2095.
In this case at this time, requiring Plaintiffs to go back and ask the union to pursue its grievances would be a futile exercise because the union would not reactivate the grievance and would unreasonably delay Plaintiffs' opportunity to obtain a judicial hearing on the merits. International Union President Frank Hurt, in response to the July 31, 1993 Hill letter, stated, "[I]t appears to me that the Officers of your local union represented you properly in this matter. Brother Walton has given evidence which leads me to believe that there is nothing further that I can do to assist you." Since the union had already foreclosed the possibility of pursuing the Plaintiffs' claims, requiring Plaintiffs now to exhaust union remedies prior to coming before this Court would be counterproductive and cause unreasonable delay. Therefore, under Clayton, Plaintiffs are excused from any requirement of exhausting union remedies.
LET ORDER AND JUDGMENT BE ENTERED ACCORDINGLY.

ORDER AND JUDGMENT RE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
The Court, having made and entered its Decision, Findings of Fact and Conclusions of Law herein, now makes its Order and Judgment on the First Amended Complaint and on Defendants' Motion for Summary Judgment, as follows:
1. Summary Judgment is GRANTED in favor of Ralphs and against Plaintiffs, who shall take nothing, on or by reason of the following claims: First Cause of Action for Breach of Contract (and all claims stated therein); Fourth Cause of Action for Breach of the Covenant of Good Faith and Fair Dealing (and all claims stated therein); Fifth Cause of Action for Misrepresentation/Fraud (and all claims stated therein); Sixth Cause of Action for Conspiracy (and all claims stated therein); Eighth Cause of Action for Failure to Pay Wages (for all State law claims stated therein); and Ninth Cause of Action for Intentional Infliction of Emotional Distress (and all claims stated therein).
2. Summary Judgment is GRANTED in favor of Local 37 and against Plaintiffs, who shall take nothing, on or by reason of the following claims: Second Cause of Action for Breach of Duty of Fair Representation (and all claims arising out of the alleged depletion of strike funds and the creation of an inadequate collective bargaining agreement); Third Cause of Action for Breach of Fiduciary Duty (and all claims stated therein); Fourth Cause of Action for Breach of Covenant of Good Faith and Fair Dealing (and all claims stated therein); Fifth Cause of Action for *1505 Misrepresentation/Fraud (and all claims stated therein); Sixth Cause of Action for Conspiracy (and all claims stated therein); and Ninth Cause of Action for Intentional Infliction of Emotional Distress (and all claims stated therein).
3. Local 37's Motion for Summary Judgment is DENIED to Local 37 on the Second Cause of Action for Breach of Duty of Fair Representation for all claims arising out of Local 37's alleged failure to respond adequately to the closure of Ralph's baking plant.
4. Local 37's Motion for Dismissal in Abatement of all claims against Local 37 is DENIED.

5. The Clerk of this Court is directed to serve a copy of this Order and Judgment upon counsel of record for each party hereto.
NOTES
[1] The Term of Agreement clause provides,

This Contract shall be effective from July 5, 1992, to and including July 8, 1995, and thereafter from year-to-year unless at least sixty (60) days prior to such annual expiration date notice is given in writing by either party of an intention to terminate or modify such Agreement. In the event notice of termination is given, such termination shall be effective as of such annual expiration date.
[2] The Binding Clause provides,

Each of the parties hereto warrants that it is under no disability of any kind that will prevent it from completely carrying out and performing each and all of the provisions of this Agreement and further that it will not take any action of any kind that will prevent or impede it in the complete performance of each and every provision hereof. This Agreement contains all of the covenants, stipulations and provisions agreed upon by the parties hereto with respect to matters affecting wages, hours and other terms and conditions of employment and similar or related subjects, and no representative of either party has authority to make and none of the parties shall be bound by any statement, representation, or agreement not set forth herein.
[3] See 29 U.S.C. § 2101 for the text of the W.A.R.N. Act.
[4] The courts are split as to whether a six-month statute of limitations in this case is also tolled as to the employer. One district court has held that it is tolled vis-a-vis the employer. Walker v. Teamsters Local 71, 714 F.Supp. 178 (W.D.N.C. 1989), rev. in part on other grounds, Walker v. Consolidated Freightways Inc., 930 F.2d 376 (4th Cir.1991). However, the Sixth Circuit has specifically held that an employee's claim against her employer was not tolled while she pursued an internal union appeal. Robinson v. Central Brass Mfg. Co., 987 F.2d 1235, 1242-43 (6th Cir.1993). Nevertheless, this issue is moot because there are independent grounds for granting Summary Judgment in favor of Ralphs as noted supra in our discussion of Ralphs' Motion for Summary Judgment.
[5] In Pantoja, on which Local 37 principally relies, the plaintiff wrote a letter to the union to reactivate his grievance and argued that sending the letter was an attempt to exhaust internal union remedies that tolled the limitations period. Pantoja, 965 F.2d at 328. The court held that an act prior to sending the letter exhausted the internal remedies, and writing the letter did not toll the limitations period. Id. In Pantoja, unlike in our case, the internal union remedies were already exhausted before the letter was written, so it is not directly on point. But the holding set forth in the text is instructive.
[6] There is evidence showing that the DeConcini letter was read in a September 1992 Local 37 executive board meeting. (Benoit Dec. at ¶ 2).